In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-222 CV


____________________



RONALD SIMON OHENDALSKI, Appellant



V.



PAULA JEAN OHENDALSKI, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 02-06-03960






 OPINION 


 Ronald Ohendalski appeals from the terms of the trial court's order regarding his
rights to visitation with his children and from the court's property division in his divorce
decree. He contends the trial court abused its discretion by awarding Paula Ohendalski 81
percent of the community estate and that the evidence was legally and factually insufficient
to support the award. Ronald also complains that the record is insufficient to support the trial
court's order regarding child visitation because the imposed terms differ from those
contained in a standard possession order. After reviewing the record, we find no abuse of
discretion in the trial court's determination of the issues challenged on appeal. We affirm
the trial court's judgment.

BACKGROUND

 Ronald and Paula married in 1985. In 2002, Paula filed for a divorce. During their
marriage, they had three children, who were thirteen, eight, and seven years of age when the
trial court entered the divorce decree. Among the grounds for the divorce, Paula asserted that
Ronald's cruel treatment of her made their living together insupportable and that Ronald had
committed adultery. Paula also asserted a "no fault" ground that the marriage was
insupportable "because of discord or conflict of personalities . . . that destroys the legitimate
ends of the marriage relationship and prevents any reasonable expectation of reconciliation." 
See Tex. Fam. Code Ann. § 6.001 (Vernon 2006). Paula requested that the trial court give
her a disproportionate distribution of the marital estate and alleged twenty-three separate
grounds to justify her claim. Paula also requested that the court issue orders for the safety
and welfare of the children as deemed necessary and equitable. 

 During the past four years of the marriage, Ronald worked for various employers as
a pipe-fitter. At the time of trial, Ronald's most recent paycheck indicated that he made
$19.55 per hour. Ronald also testified that he occasionally worked as a professional
musician, averaging one performance every weekend. Ronald testified that his earnings from
playing with various groups ranged from $28 to $128 per night. In 2003, Ronald earned
$31,094 as a pipe-fitter and $3,142 as a musician. 

 With respect to Paula's employment, the evidence showed that in January 1998, she
became the president of Jobs, Etc., Inc., a new corporation whose shares were owned by her
sister-in-law. In March 1998, Jobs, Etc. purchased the assets of an employment agency
owned by another individual. Paula denied that she contributed any capital to purchase the
business, but testified that she was responsible for Jobs, Etc.'s day-to-day operations. At the
time of the trial, in late 2004, Paula testified that her sister-in-law still owned 100 percent of
the stock in Jobs, Etc., that the financial condition of the company was poor, and that its only
assets consisted of paper files, obsolete computers, and five-year-old desks. Additionally,
Paula testified that Jobs, Etc. had approximately $80,000 to $90,000 in outstanding tax liens
filed against it. Paula testified that during the past two years, she earned approximately
$1,900 per month from Jobs, Etc. 

 Ronald contends that the court erred in not including the value of the Ohendalski Joint
Venture in dividing the marital estate. Specifically, he alleged that the Ohendalski Joint
Venture and Jobs, Etc. maintained some type of relationship that created an additional marital
asset subject to division. Ronald asserted that "loss or profit from that joint venture is a
community asset that needs to be divided." In his brief, Ronald noted that his and Paula's
joint tax returns, for tax years 1998 through 2001, reflect income and losses attributable to
the Ohendalski Joint Venture. The trial record does not contain tax records after 2001, and
there is no testimony to reflect any profits or losses on the Ohendalski Joint Venture after
2001.

 Except for the assertion in his brief regarding the potential assets of the Ohendalski
Joint Venture, the trial record does not show that the agreement regarding profits or losses
extended to any gains or losses derived or attributed in any manner to Jobs, Etc. after 2001. 
Furthermore, upon being shown the tax returns that listed profits and losses for the
Ohendalski Joint Venture, Ronald testified that he had no knowledge of the business affairs
of the Ohendalski Joint Venture. Additionally, Ronald testified that Paula did not receive a
paycheck from Jobs, Etc. but rather received compensation in the form of a car allowance as
well as payment for her gasoline and cell phone. At no time did Ronald testify that he had
knowledge regarding Paula's arrangement with Jobs, Etc. Moreover, Ronald did not assert 
that he or Paula had acquired any right to purchase shares in Jobs, Etc. No evidence was
presented to indicate that the Ohendalski Joint Venture had value or assets at the time of trial. 
 The evidence regarding fault in the divorce concerned primarily Ronald's affair, his
alcohol use, and his mistreatment of Paula during their marriage. When the adultery question
arose at trial, Ronald stipulated to an extramarital affair. 

 With respect to Ronald's alcohol use, Ronald does not dispute that he drinks alcohol
but denies that his consumption endangers the children. Ronald testified that he occasionally
drank when he played with his band and that he customarily drove home afterwards. The
trial court also heard additional evidence that Ronald occasionally drank before or during
times that he drove and that he commonly drank on weekends. Specifically, Paula's mother
testified that she witnessed Ronald intoxicated at locations where he performed, and that on
one such occasion, the children were present. Moreover, a close friend of Paula's testified
that she observed Ronald "after driving, knowing that [he had] been drinking while driving." 
Paula's friend also recalled that on one occasion she saw Ronald drive up to a convenience
store, and after smelling alcohol on him, observed him stagger when he walked. Ronald's
mother testified that she saw Ronald drinking while playing with his band, and that
occasionally, after such performances, she would find him asleep in his truck outside her
house with the engine running. She additionally testified that she suspected that Ronald was
drinking while driving with the children based on a conversation she had with Ronald two
weeks prior to trial when he called her from his cell phone. Ronald disputed that he and his
mother had this telephone conversation. Paula also presented direct evidence that Ronald
drank eight to nine beers per day and that he often drove while drinking. 

 The record also reflects testimony concerning several physical altercations between
Ronald and Paula, including an incident when Ronald kicked her in the presence of one of
the children, and several other incidents of Ronald's abusive treatment of Paula. Apparently,
based on these incidents, the trial court found that Ronald "is guilty of cruel treatment toward
Paula Jean Ohendalski of a nature that renders further living together insupportable."

 Finally, the trial transcript reflects that the parties agreed to allow the court to
interview the children. However, both parties waived their right to have a record of the
interview and thus, no record of these interviews is contained in the appellate record. 

PROPERTY DIVISION

 The Texas Family Code provides that a trial court "shall order a division of the estate
of the parties in a manner that the court deems just and right, having due regard for the rights
of each party . . . . " Tex. Fam. Code Ann. § 7.001 (Vernon 2006). Generally, a divorce
court has wide latitude in the exercise of its discretion to divide the marital estate. Williams
v. Williams, 160 Tex. 99, 325 S.W.2d 682, 684 (1959). Thus, absent an abuse of discretion,
the divorce court's division of a marital estate will not be disturbed on appeal. See Schlueter
v. Schlueter, 975 S.W.2d 584, 588-89 (Tex. 1998); Murff v. Murff, 615 S.W.2d 696, 698
(Tex. 1981); see also Loaiza v. Loaiza, 130 S.W.3d 894, 900 (Tex. App.-Fort Worth 2004,
no pet.) (sufficiency review under abuse of discretion standard).

 The division of the marital estate need not be equal, and fault is one of the many 
factors that a trial court may consider in making a division of the community estate. See
Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993); Schlueter, 975 S.W.2d at 589; Murff,
615 S.W.2d at 698-99; Young v. Young, 609 S.W.2d 758, 761-62 (Tex. 1980). A
disproportionate division must have a reasonable basis. Smith v. Smith, 143 S.W.3d 206, 214
(Tex. App.-Waco 2004, no pet.). If there is some evidence of a substantive and probative
character to support the decision, the trial court does not abuse its discretion if it orders an
unequal division of the marital estate. In re Marriage of Jeffries, 144 S.W.3d 636, 640 (Tex.
App.-Texarkana 2004, no pet.). Generally, in a fault-based divorce, the court may consider
the conduct of the errant spouse in making a disproportionate distribution of the marital
estate. Young, 609 S.W.2d at 761-62. The grounds for a fault-based divorce specifically
include cruelty and adultery. Tex. Fam. Code Ann. §§ 6.002-.003 (Vernon 2006). 

 The trial court gave 81 percent of the community estate to Paula and 19 percent of the
estate to Ronald. Although Paula acknowledges the award to her is more than half the
community estate, she argues that the trial court acted within its discretion. We agree. The
trial court had "the opportunity to observe the parties on the witness stand, determine their
credibility, evaluate their needs and potentials, both social and economic." Murff, 615
S.W.2d at 700. There is sufficient evidence of adultery and abusive treatment to support the
court's unequal division of the community estate. Thus, the record contains evidence of a
substantive and probative character to support the trial court's decision. 

 We have upheld a similar award to a spouse in which the grounds for divorce included
cruelty and adultery. See Golias v. Golias, 861 S.W.2d 401 (Tex. App.-Beaumont 1993, no
writ) (79% of marital estate awarded to wife). Although percentage figures from other cases
do not control our disposition of Ronald's issue, as we review each case on its merits, we
observe that similar divisions of marital estates have been approved on appeal by other courts
in similar circumstances. See Faram v. Gervitz-Faram, 895 S.W.2d 839 (Tex. App.-Fort
Worth 1995, no pet.) (73%); Oliver v. Oliver, 741 S.W.2d 225 (Tex. App.-Fort Worth 1987,
no writ) (80%); Rafidi v. Rafidi, 718 S.W.2d 43 (Tex. App.-Dallas 1986, no writ) (85%-90%); Morrison v. Morrison, 713 S.W.2d 377 (Tex. App.-Dallas 1986, writ dism'd) (83%);
Jones v. Jones, 699 S.W.2d 583 (Tex. App.-Texarkana 1985, no writ) (86%); Campbell v.
Campbell, 625 S.W.2d 41 (Tex. App.-Fort Worth 1981, writ dism'd) (96%); Huls v. Huls,
616 S.W.2d 312 (Tex. Civ. App.-Houston [1st Dist.] 1981, no writ) (85%). 

 Even though Ronald does not challenge the trial court's findings of adultery or
cruelty, the trial court's division is not premised solely on its findings of fault. The trial court
also based its unequal division of the marital estate on the benefits that Paula would have
derived from the continuation of the marriage, Ronald's greater earning power due to his
education and employment prospects, and the enhancement of the community estate because
of the expenditures of Paula's separate assets. These, among others, are also factors that a
court may consider in making a just and right division of a marital estate. Murff, 615 S.W.2d
at 699. In addition to the fault grounds and other factors mentioned above, the trial court
herein also considered the "wasteful expenditures made by [Ronald] in furtherance of said
extramarital affair" when it divided the community estate. Moreover, Ronald ignores the
trial court's division of the debt on the real and personal property consistent with its division
of property. We conclude that the evidence supports an unequal division of the marital
estate. Based on the record before us, we are unable to find an abuse of discretion in the trial
court's equitable division of the community estate. Appellant's issue number two regarding
the division of marital property is overruled. 

POSSESSION

 On appeal, Ronald challenges the divorce decree's terms concerning his rights to
possession of his children that differ from the terms of a standard possession order. See Tex.
Fam. Code Ann. § 153.312 (Vernon Supp. 2006). Specifically, Ronald complains that the
possession order limits his "total access to the children to sixty-four hours per month without
provisions for any holidays, summer visitation, birthdays or Father's Day." Ronald also
complains that during the periods he has possession of the children, the order prohibits his
operating a vehicle while the children are passengers. Ronald argues that under the Family
Code, a trial court's order imposing restriction on a parent's right to possession or access
"may not exceed those that are required to protect the best interest of the child." See Tex.
Fam. Code Ann. § 153.193 (Vernon 2002). 

 We begin our review of the record noting that the Family Code creates a rebuttable
presumption in favor of the terms contained in the standard possession order. Tex. Fam.
Code Ann. § 153.252 (Vernon 2002). Next, we look to the trial court's specific reasons for
varying from the standard order. Tex. Fam. Code Ann. § 153.258 (Vernon 2002). Here, the
trial court's findings reflect that the court deviated from the standard possession order
because Ronald committed acts of family violence in the presence of one or more of the
children; demonstrated a history of chronic alcohol abuse; terrorized one or more of the
children by operating a vehicle while under the influence when the children were passengers;
consumed alcohol during periods of supervised visitation; and agreed prior to the divorce to
arrange transportation from his home to the children's home at the end of his periods of
possession. The trial court's factual findings appear based, at least in part, on interviews
it conducted of the children in chambers during the trial, which as previously stated, were not
recorded pursuant to the agreement of all parties. See Tex. Fam. Code Ann. § 153.009
(Vernon Supp. 2006). As a result, while there are facts in the record before us consistent
with the trial court's findings regarding its deviation from the standard possession order, we
do not have the entire record of the proceedings below. Where we have only a partial record
of the trial proceedings, we presume that the omitted portions support the trial court's ruling. 
Christiansen v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990). This presumption also applies
in family law cases where the judge conducts interviews in chambers with the minors. Long
v. Long, 144 S.W.3d 64, 69 (Tex. App.-El Paso 2004, no pet.); Richards v. Schion, 969
S.W.2d 131, 133 (Tex. App.-Houston [1st Dist.] 1998, no pet.). "Considering that the trial
court interviewed the children in chambers, we must presume facts existed to support the
modification and that allowed the judge to find that change in the [children's] primary
residence was in their best interest." Long, 144 S.W.3d at 71. 

 Similarly, the trial court's interview of the children in this case, together with the
above-summarized evidence at trial, supplies all facts necessary to support the challenges
made here regarding the trial court's deviations from the standard possession order. We find
no abuse of discretion in the trial court's limiting Ronald's driving while his children are
passengers, or in limiting Ronald's access to his children to sixty-four hours per month
without provision for any holidays, summer visitation, birthdays or Father's Day. 
Accordingly, issue number one is overruled and the judgment of the trial court is affirmed. 

 AFFIRMED.



 ____________________________

 HOLLIS HORTON

 Justice



Submitted on July 27, 2006

Opinion Delivered September 28, 2006

Before Gaultney, Kreger, and Horton, JJ.