In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-521 CV


____________________



MICHAEL ANTHONY PEREZ, Appellant



V.




CINDY MARIE PEREZ, Appellee







On Appeal from the 279th District Court


Jefferson County, Texas


Trial Cause No. F-193,375






 MEMORANDUM OPINION


 Michael Anthony Perez appeals from the trial court's property division and injury
award in a final divorce decree. Cindy Marie Perez and Michael Anthony Perez were
married on January 23, 1999. Cindy filed her petition for divorce in January 2005. After a
seven-day bench trial, the trial court entered the divorce decree on August 31, 2006. The
final decree dissolved the marriage on the grounds of insupportability, adultery, and cruel
treatment. The trial court also ordered Mike to pay damages to Cindy because he assaulted
her. We dismiss in part and affirm in part.

 Mike raises six appellate issues. Issues one, two, and three maintain that certain bank
accounts were Mike's separate property and that the trial court erred in allocating portions
of those accounts to Cindy. Issue four contends the trial court erred when it awarded Cindy
$25,000 for damages she sustained when Mike assaulted her. Issue five asserts the trial court
erred in denying Mike's post-trial motion to modify the parent-child relationship. Issue six,
raised in a post-submission motion, contends we should remand the case for a new trial
because an exhibit is missing from the appellate record.

BANK ACCOUNTS


 We consider issues one, two, and three together because Mike presents the same
appellate argument for these issues, which deal respectively with accounts numbered 6772,
6774, and 5914. (1) All three accounts were certificates of deposit in Mike's name at Bank of
America. Mike argues that the accounts were his separate property, that the trial court
mischaracterized them as community property, and that the trial court erred by awarding
fifty-five percent of each account to Cindy.

 Mike concedes that his sister, who was listed on the CD accounts with Mike,
withdrew the funds on January 23, 2005, shortly after Cindy filed her divorce petition. Mike
testified that he had not recovered any of the CD monies from his sister, but he believed that
any claim for repayment should be his "separate claim." Mike contends that the alleged
mischaracterization is "substantial" rather than de minimis error. 

 Cindy contends that Mike made only a few references to the record and that "the
uncited Record is presumed to support [the trial court's] conclusions." Cindy further argues
that the trial court did not abuse its discretion in awarding her a disproportionate division of
the marital estate because the trial court is entitled to consider numerous factors in dividing
their estate.

Standard of Review


 The Texas Family Code requires the trial court to divide a marital estate in a "just and
right" manner, considering the rights of the parties. Tex. Fam. Code Ann. § 7.001 (Vernon
2006). The trial court may generally exercise broad discretion in dividing a marital estate. 
Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998); Ohendalski v. Ohendalski, 203
S.W.3d 910, 914 (Tex. App.-Beaumont 2006, no pet.). A reviewing court will not disturb
the trial court's division of a marital estate unless the court abused its discretion. See Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). A court abuses its discretion when it acts
without reference to any guiding rules or principles, or alternatively, when its acts are
arbitrary or unreasonable. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).

 If a reasonable basis exists, the trial court may order an unequal division of the
community property. Robles v. Robles, 965 S.W.2d 605, 621 (Tex. App.-Houston [1st Dist.]
1998, pet. denied). When, however, the trial court erroneously characterizes

 separate property as community property, then the property does not get
divided as part of the community estate. If the mischaracterization is harmful
as to the value of the division of property, then we must remand the entire
community estate to the trial court for a just and right division of the properly
characterized community property. If on the other hand, the mischaracterized 
property had only a de minimis effect on the trial court's just and right division,
then the trial court's error is not [an] abuse of discretion. 


Id. at 621-22.

Were the Accounts Mike's Separate Property?


 The Texas Family Code establishes a presumption that property possessed by either
spouse during or on the dissolution of the marriage is community property. Tex. Fam. Code
Ann. § 3.003(a) (Vernon 2006). A spouse seeking to overcome this presumption must prove
the separate character of the disputed property by clear and convincing evidence. Id. at §
3.003(b). In other words, the spouse must trace and clearly identify the property claimed as
separate property. Estate of Hanau v. Hanau, 730 S.W.2d 663, 667 (Tex. 1987).

 On appeal, Mike relies on his trial testimony and his exhibit 17 to establish the
separate character of the CDs. Exhibit 17 is a copy of Mike's bank statement dated January
6, 1999, approximately two weeks before he and Cindy married on January 23, 1999. This
pre-marriage bank statement shows that accounts 6772 and 6774 had balances of $10,894.63
each, while account 5914 had a balance of $8,500.57. At trial, Mike testified as follows: 

 Q. On . . . Respondent's exhibit 17, can you tell us the balance on that
account?


 A. [$66,040].


 Q. Okay. And that's a collective balance; isn't it?


 A. Yes, ma'am. 


 Q. Does that include [a] checking account and savings account and four CDs?


 A. Yes, ma'am.


 Q. What date is that on?


 A. Closing 1/6/99.


 Q. And those are funds you had prior to this marriage?


 A. Yes, ma'am.


 Q. And the four CD's that are reflected, two-$10,000 CDs and two-$8,000 CDs,
do you still have those funds?


 A. I have - 


 Q. Do you still have the CDs, Mr. Perez?


 A. No, I don't have the CDs. One of the CDs when it mature[d] went into the
account where my mother's inheritance went into.


 Q. Okay. And the other three CD's, are those also gone?


 A. Yes, those are the ones that Cindy and my sister cashed out.


 Q. Do you know who actually cashed out those CDs? Whose name was
on them with you?


 A. My sister.


 Mike also testified that he and his sister had a verbal agreement that the CDs would
be used for his children if he became incapacitated, but he explained that he and his sister had
not spoken in several years. He stated that the CDs were "cashed in" on January 23, 2005.
Mike speculated that Cindy must have intercepted some mail about the CDs and given that
information to his sister. 

 In addition to Mike's testimony and exhibit 17 (the pre-marriage bank statement), the
appellate record contains two other bank statements with pertinent information about the
CDs. The first shows the account values shortly before Cindy filed her divorce petition, and
the second shows that less than a month after Cindy filed her petition, the account values
were "zero." Mike's "shortly-before-filing" bank statement was dated January 5, 2005, and
shows that accounts 6772 and 6774 had balances of $13,055.59 each and that their maturity
date was January 27, 2005; the statement also shows that account 5914 had a balance of
$10,228.37 and a maturity date of October 2, 2005. Mike's "shortly-after-filing" bank
statement was dated February 2, 2005, and showed a "zero" balance in each account. In
addition to establishing the CDs' values before and after Cindy filed her petition for divorce,
the statements show that the CDs earned interest between 1999 and 2005 and that during that
period, the account numbers for the CDs remained the same. 

 Here, the record shows that the purchase money for the CDs was separate property in
January 1999. But, the record also shows that the CDs earned interest during the marriage. 
Interest earned on separate bank accounts is community property. See Tex. Fam. Code Ann.
§ 3.002 (Vernon 2006) ("Community property consists of the property, other than separate
property, acquired by either spouse during marriage."); McClary v. Thompson, 65 S.W.3d
829, 834 (Tex. App.-Fort Worth 2002, pet. denied). Based on Mike's testimony and the
documentary evidence in the record, we conclude that the CDs numbered 6772, 6774, and
5914 contained both separate funds (the amounts that Mike had on deposit prior to his
marriage to Cindy) and community funds (the amount of interest earned by the accounts
during Mike's and Cindy's marriage). The pre-marriage bank statements established the
beginning values of the CD's that were Mike's separate property. By characterizing the
entire accounts as community, when the separate property amounts were in evidence, the trial
court mischaracterized a significant portion of the CDs as community property. Therefore,
we find the court erred in characterizing the CDs, in their entirety, as community property.

 The court's decree did not award or divide any claim that Mike or Cindy might have,
if any, against his sister for cashing the CDs. With respect to the CDs, the court's decree
divided assets shown by the evidence to have no value at the time of the divorce. We find
the trial court did not abuse its discretion because its mischaracterization had, at most, a de
minimis effect on the division of the community estate, which is estimated to be $1.5 million. 
See Robles, 965 S.W.2d at 621-22; see also Tex. R. App. P. 44.1(a). (2)
 Accordingly, we
overrule issues one, two, and three.

AWARD OF DAMAGES TO CINDY 


 Issue four contends the trial court erred by awarding Cindy damages as a result of
Mike's assault; the court awarded $20,000 for pain and suffering and awarded $5,000 for
mental anguish. See Twyman v. Twyman, 855 S.W.2d 619, 624-25 (Tex. 1993) (recognizing
right in a divorce action to bring tort claim based on negligence and an intentional act such
as assault or battery). Mike challenges the factual sufficiency of the evidence to support the
trial court's assault and damages findings. Cindy maintains that Mike has waived this issue
because he did not raise it in his motion for new trial. Rule 33.1(d) of the Texas Rules of
Appellate Procedure, however, applies in non-jury cases and allows a party to bring
sufficiency-of-the-evidence challenges - including complaints that the damages found by the
court are excessive or inadequate - for the first time on appeal. Tex. R. App. P. 33.1(d). 

Standard of Review


 Because Mike is attacking the factual sufficiency of adverse findings on an issue for
which Cindy had the burden of proof (assault and resulting damages), Mike must show that
there is insufficient evidence to support the findings. See Am. Interstate Ins. Co. v. Hinson,
172 S.W.3d 108, 120 (Tex. App.-Beaumont 2005, pet. denied). In reviewing this point, we
examine both the favorable and unfavorable evidence regarding the trial court's findings and
set them aside only if the evidence supporting the findings "is so weak that it is clearly wrong
and manifestly unjust." Id. (citing Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407
(Tex. 1998); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). Further, fact-finders decide "the
credibility of the witnesses and the weight to give their testimony. They may choose to
believe one witness and disbelieve another. Reviewing courts cannot impose their own
opinions to the contrary." City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005)
(footnotes omitted). 



Assault Statute


 Both criminal and civil law use the same definition of assault. LaBella v. Charlie
Thomas, Inc., 942 S.W.2d 127, 138 (Tex. App.-Amarillo 1997, writ denied). Under the
Texas Penal Code, a person commits assault if he:

 (1) intentionally, knowingly, or recklessly causes bodily injury to another,
including the person's spouse;

 

 (2) intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse; or

 

 (3) intentionally or knowingly causes physical contact with another when the
person knows or should reasonably believe that the other will regard the
contact as offensive or provocative. 


Tex. Pen. Code Ann. § 22.01(a) (Vernon Supp. 2007). In her petition, Cindy asserted that
Mike intentionally, knowingly, or recklessly caused her to suffer bodily injury prior to her
filing for divorce.

Findings of Fact


 Mike complains specifically of certain fact findings in which the trial court
determined that: (1) he physically assaulted Cindy (findings 2C and 33); (2) he was guilty
of cruel treatment to Cindy (finding 2C); (3) Cindy incurred physical injuries, physical pain,
and mental anguish as a result of the assault, which also aggravated her pre-existing medical
condition (finding 33); and (4) there was clear and convincing evidence that the assault was
intentional, reckless, and with the knowledge of Cindy's preexisting condition (finding 34).

 The record contains evidence consistent with the trial court's findings that Mike
physically assaulted Cindy and was guilty of cruel treatment to her (findings 2C and 33). At
trial, Cindy testified about the assault that occurred in November 2004. She stated that Mike
got angry when she did not give him the telephone quickly enough. According to Cindy,
Mike grabbed the phone from her, walked out of the room, then came back into the room,
and threw the phone at her. Cindy explained in more detail: 

 He grabbed my face and turned me around; and he was about two inches from
my face (indicating).

 

 He had one hand on my neck; and he said, 'Whenever I - whenever I
[expletive deleted] talk to you, you better listen . . . . 


 [Later] Mike had both hands on my neck; and he had me pushed up
against - I was in my office chair. He had me pushed up against the desk
which was hitting the wall. Lisa heard some commotion and came out. I
started kicking Mike, pushing on him. I finally got him off . . . of me; and he
left. . . . 


 Mike testified that he and Cindy had an argument about a problem with an important
customer on the day of the assault. Cindy cursed at him while she was sitting in a chair.
Mike explained what happened next: "I - I reached down and I grabbed her and I said - I
turned her towards me and I said 'Thanks - I'm tired of being treated like [expletive deleted]. 
Thanks a lot, you [expletives deleted]. We can change this husband and wife situation." 
Mike stated that he then dropped the phone on the desk and took an employee home. When
he came back, he apologized to Cindy and said he should not have cursed at her. Mike
denied choking her. When asked whether he put his hands on her neck, he said: "If I did it,
[it] was whenever I grabbed her - you know. . . I grabbed her. You know, I said - you know,
turned her around to face me whenever she was cussing about the whole incident."

 On cross-examination, Mike acknowledged that his deposition testimony described
the alleged assault differently. At the request of opposing counsel, he read into the record
his deposition testimony about his conversation with a marriage counselor:

 And I said, "Yes." I said, "I should have never, you know, cussed at
her like that and grabbed her by the face and turned her back to me and cussed
at her . . . . I said, "we were both cussing at one another;" and I said, "I don't
do that.


 Officer Gary Porter investigated the assault at the Perez residence on November 5,
2004. Officer Porter described Cindy as: "Distraught. Very upset. Her face was red. Her
neck was red. She was crying." Officer Porter described Mike as "maybe arrogant or
cocky." Officer Porter spoke to Mike and Cindy and then instructed Mike to leave. On cross
examination, Officer Porter stated that he did not "see any specific hand marks or fingerprint
marks or bruises or anything like that." Cindy filed criminal charges against Mike. Officer
Porter testified that he obtained witness statements from the District Attorney's Office in
response to a subpoena for his investigation records.

 Dr. Lance Craig, Cindy's treating physician, saw Cindy several days after her
November altercation with Mike. At that time, according to Dr. Craig, she had fingerprints
and finger marks on her throat, and she complained that she was in a significant amount of
pain that radiated down her arms into her hands. Dr. Craig's testimony reflects Cindy had
been one of his patient's since 1999, and that he was familiar with the history of her cervical
complaints including her three prior neck surgeries.

 Under cross examination, Dr. Craig acknowledged that he allowed Cindy to stay at
a house he owned in Houston because a woman he was dating asked him to do so. Upon
redirect, he testified that during the time Cindy lived in his Houston house, he never met her,
and she was not married to Mike then.

 Mike argues that we should discount Dr. Craig's testimony because he is Cindy's 
friend. However, the trial court heard Dr. Craig's testimony and it is the trial court's role to
determine the credibility of the witnesses. See City of Keller, 168 S.W.3d at 819. 

 The trial court, as factfinder, is entitled to resolve any conflicts in the testimony. Id.
The parties' testimony is sufficient to establish that Mike intentionally, knowingly, or
recklessly contacted Cindy, and Dr. Craig's testimony is sufficient to support the trial court's
finding that Mike's contact caused Cindy to suffer a bodily injury. We hold that the evidence
is factually sufficient to support the trial court's findings. 

 Mike also challenges the trial court's finding that clear and convincing evidence
showed that the assault was intentional or reckless, and with knowledge of Cindy's
preexisting condition (finding 34). The record clearly shows that Mike grabbed Cindy's face
and neck and supports the conclusion that his doing so was intentional and not accidental. 
The record further shows that Mike was well aware of Cindy's physical conditions and past
surgeries. Indeed, he testified that he had been present at the hospital for "every one" of her
surgeries and had stayed with her until she was released.

 In view of the foregoing, we do not find the trial court's findings to be so weak that
they are "clearly wrong and manifestly unjust." See Hinson, 172 S.W.3d at 120. We
overrule issue four. We hold that clear and convincing evidence supports the trial court's
finding that the assault was reckless, and since a reckless finding is sufficient to support the
trial court's holding, we need not address whether the evidence is sufficient to prove that
Mike acted with the intent to injure Cindy. See Tex. R. App. P. 47.1 (encouraging opinions
to be brief and to address the issues "necessary to final disposition of the appeal").

PETITION TO MODIFY PARENT-CHILD RELATIONSHIP


 Issue five contends the trial court erred in denying Mike's post-trial petition to modify
the parent-child relationship. Mike alleges that after the trial court designated Cindy as the
managing conservator with the "exclusive right to establish the primary residence of the
child," she suffered an overdose of prescription medication and entered a drug rehabilitation
program.

 Mike filed his petition to modify the parent-child relationship on October 19, 2006. 
After a temporary hearing on Mike's motion to modify on November 21, 2006, the trial court
did not enter a written order but pronounced its ruling on the record. (3)
 Mike filed his notice
of appeal on November 27, 2006. His notice of appeal, however, includes only the
"judgment or order . . . signed on August 30, 2006." Mike's notice does not include the trial
court's ruling from the motion-to-modify hearing.

 Rule 25.1 requires the notice of appeal to "state the date of the judgment or order
appealed from[.]" Tex. R. App. P. 25.1(d)(2). After a party has filed his brief, he may amend
his notice of appeal only with leave of court. Tex. R. App. P. 25.1(f). A party may amend
a notice of appeal to correct a "defect or omission." Id. "However, Rule 25.1(f) does not
permit an amendment to add an entirely different order from which the Appeal is taken."
Rainbow Group, Ltd. v. Wagoner, 219 S.W.3d 485, 492 (Tex. App.-Austin 2007, no pet.).

 Because Mike's notice of appeal states that he appeals only from the final divorce
decree, we have no jurisdiction to consider issue five. See Tex. R. App. P. 26.1(a), 26.3, 
42.3(a). We dismiss Mike's appeal as it relates to his motion to modify the parent-child
relationship.

LOST EXHIBIT 


 In a motion for new trial filed in this Court on February 27, 2008, (approximately four
months after this case was submitted on October 26, 2007), Mike asks that he be granted a
new trial because exhibit 13 is lost. Mike relies on Rule 34.6 (f) in making his request. See
Tex. R. App. P. 34.6 (f). (4)
 Mike did not seek leave to amend or supplement his brief to add
an additional issue. See Tex. R. App. P. 38.7. Though we are not required to do so, we
consider this question as an additional issue, number six. See id. However, as explained
below, we find that the exhibit is not necessary to the appeal's resolution. See Tex. R. App.
P. 34.6 (f). 

 Mike argues that the lost exhibit 13 contained evidence showing that Cindy wasted
community assets in the approximate amount of $787,000 - substantially more than the
$124,000 that the trial court found she wasted. As to what exhibit 13 showed, however, the
trial court considered this question thoroughly at a hearing on Mike's motion for new trial
filed below. The hearing took place on October 19, 2006. At the hearing, Mike's counsel
argued as follows: 

 Counsel: The point in the record is that there was $787,000 spent in 15 months;
not two years.

 Court: And that's what Exhibit 13 shows?

 Counsel: Exhibit 13-

 Court: Yes or no?

 Counsel: It shows - I don't know for sure what it shows.

 Court: It was your exhibit. You don't have it? 

 Counsel: I do not have it. I do not have anything that I believe is an accurate
reflection of Exhibit 13; and I have gone through and through my
exhibits, my notebooks.


 . . . .

 I didn't read the document in its entirety into the record and without the
document, it's not de minim[i]s. It is absolutely relevant to show her
pattern of spending, what she was spending money on, and how she
explained it in front of this Court . . . [opposing counsel has]
acknowledged we tendered 13, admitted 13. I have checked
everything.


 . . . .


 Court: What was the time period that you're talking about that Exhibit 13
covered?


 Counsel: It was tendered - 


 Court: No, what is the time period the cash receipts covered?


 Counsel: I don't recall exactly.

 . . . .

 Court: And I will tell you that I believe and I will find that the cash accounting
and the cash receipts and the cash expenses are supported by the record;
even though Exhibit No. 13 is not available.


 Thus, when asked directly by the trial court whether exhibit 13 showed $787,000 in
wasting, Mike's counsel replied that she did not know "for sure" what the exhibit showed. 
Mike had an opportunity to show the trial court why the lost exhibit was necessary, but he
failed to do so. See Tex. R. App. P. 34.6 (f) (3). 

 On appeal, Mike argues that if the exhibit shows "wasting" by Cindy of $787,000, it
"would have a major impact" on Cindy's credibility, "would call for a new property
division," and would enhance Mike's credibility. Mike, however, did not bring an appellate
issue on "wasting," (5)
 and we dismissed Mike's issue five regarding modification of the
parent-child relationship for jurisdictional reasons. Mike, thus, must demonstrate why the
exhibit is necessary for this Court's resolution of his four remaining issues-the three related
to the CDs and the one related to the damages award. 

 Issues one, two, and three claim the trial court mischaracterized his separate property
(the CDs) as community property. We already have agreed with Mike that the trial court
mischaracterized a portion of the CDs; so exhibit 13 was not necessary for Mike to prevail
on this argument. We, however, also found that the mischaracterization had, at most, only
a de minimis effect on the property division because the CDs had no value. Mike does not
explain how exhibit 13 would allow us to conclude that the CDs had value that would impact
the property division. 

 In issue four, Mike attacks the trial court's award of $25,000 in damages for Cindy's
personal injuries incurred in the assault. While Mike argues that issue 13 is pertinent to
Cindy's credibility, sufficient evidence other than Cindy's testimony supports the trial court's
assault findings (Mike's own testimony, for example). As to Cindy's testimony, however,
the trial court had ample opportunity during the seven days of trial to determine the
witnesses' credibility. See City of Keller, 168 S.W.3d at 819. Mike does not explain how
exhibit 13 affects our review of the damages issue when a witness's credibility and the
weight to be given the testimony are determined by the trial court and not the appellate court. 
See id. Further, the amount of damages was based on Cindy's unliquidated damage claims. 
Mike does not show, nor did our review locate: (1) any testimony or pleadings of Cindy in
which she sought a specific amount in damages, or (2) any request by Cindy's attorney that
Cindy be awarded a specific amount. Mike had the burden to demonstrate that exhibit 13
was necessary to the resolution of this appeal. We find he failed to carry his burden, and, as
a result, we decline to conclude that a new trial is warranted. Issue six is overruled.

CONCLUSION


 Accordingly, we dismiss this appeal as it relates to modification of the parent-child
relationship and overrule the remaining issues raised by Michael Anthony Perez. We affirm
the trial court's judgment. 

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on October 26, 2007

Opinion Delivered May 22, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. The trial court's judgment states that digits in various account numbers were omitted
for security purposes. For the same reason, we use the last four digits of the pertinent
account numbers as shown on Mike's bank statements.
2. Rule 44.1(a) provides:


 No judgment may be reversed on appeal on the ground that the trial court made
an error of law unless the court of appeals concludes that the error complained
of:

 

 (1) probably caused the rendition of an improper judgment; or

 (2) probably prevented the appellant from properly presenting the case
to the court of appeals.


Tex. R .App. P. 44.1(a).

3. The court found that

 not only is there no significant danger that [the child's] present
environment may or may not impair his emotional development
or physical health; but under the circumstances under which this
case has been brought, the Court finds that Mrs. Perez, in fact,
made sure by enlisting the help of others that there would be no
endangerment, significant or otherwise, to the child's physical
health and the child's emotional development. The Court sees
no need to enter temporary orders, other than what is currently
in place as a result of the divorce case. 

4. Rule 34.6 (f) provides:


 (f) Reporter's Record Lost or Destroyed. An appellant is entitled to a new trial under
the following circumstances:


 (1) if the appellant has timely requested a reporter's record;

 (2) if, without the appellant's fault, a significant exhibit or a significant portion of the
court reporter's notes and records has been lost or destroyed or--if the proceedings were
electronically recorded--a significant portion of the recording has been lost or destroyed or
is inaudible; 

 (3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or
destroyed exhibit, is necessary to the appeal's resolution; and

 (4) if the lost, destroyed or inaudible portion of the reporter's record cannot be
replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either
by agreement of the parties or with a copy determined by the trial court to accurately
duplicate with reasonable certainty the original exhibit.


 

5. In his appellate brief, Mike did not challenge the trial court's specific finding of fact
on the amount of wasting. "In an appeal from a nonjury trial, an attack on the sufficiency of
the evidence must be directed at specific findings of fact, rather than at the judgment as a
whole." Zagorski v. Zagorski, 116 S.W.3d 309, 319 (Tex. App.-Houston [14th Dist.] 2003,
pet. denied).