In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00536-CV**
_____

**ROBIN LUPOLE ANASTASI, Appellant**

**VS.**

**JEFFREY SCOTT ANASTASI, Appellee**

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-07-07763 CV**

**MEMORANDUM OPINION**

Appellant Robin Lupole Anastasi ("Robin") appeals from the trial court's judgment after a bench trial on the petition for divorce filed by appellee Jeffrey Scott Anastasi ("Jeff"). In its judgment, the trial court granted a divorce to Jeff on the ground of insupportability, appointed Robin and Jeff joint managing conservators of the minor children D.E.A. and C.J.A., and gave Jeff the exclusive right to designate the children's primary residence. In three issues, Robin challenges the trial court's property division, decision to give Jeff the right to

1

designate the children's primary residence, and award of primary custody of the younger child C.J.A. to Jeff. We affirm the trial court's judgment.

## ISSUE ONE

In issue one, Robin argues that the property division the trial court ordered was so disproportionate in favor of Jeff as to constitute an abuse of discretion. According to Robin, the trial court attempted to divide the property equally between the parties but failed to do so because it awarded the marital residence to Jeff. Robin contends the trial court attempted to balance that award by awarding most of the retirement funds to Robin, but the vested retirement funds had been drained and the largest remaining retirement fund is "not vested[.]" Robin argues that based upon the factors enumerated in *Finch v. Finch*, 825 S.W.2d 218 (Tex. App.—Houston [1st Dist.] 1992, no writ), the trial court erred by awarding Jeff "the lion's share of this marital estate."

In its final decree of divorce, the trial court awarded Jeff (1) the marital residence in Conroe, Texas; (2) all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in his possession or subject to his sole control; (3) all clothing, jewelry, and other personal effects in his possession or subject to his sole control; (4) fifty percent of all funds on deposit in four Chase Bank accounts; (5) one hundred percent of another Chase Bank

account; (6) all remaining sums in his retirement benefits in the TIAA-CREF account arising from Jeff's employment with Sam Houston State University that were not awarded to Robin; (7) all policies insuring Jeff's life; (8) the 2004 Mazda 3 motor vehicle; and (9) fifty percent of the frequent flyer miles. The trial court awarded Robin (1) all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in her possession or subject to her sole control; (2) all clothing, jewelry, and other personal effects in her possession or subject to her sole control; (3) fifty percent of all funds on deposit in four Chase Bank accounts; (4) one hundred percent of the funds in a Woodforest account and six Oppenheimer Fund accounts; (5) all policies insuring Robin's life; (6) one hundred percent of Jeff's retirement benefits arising from his employment with Arizona State University; (7) one hundred percent of Jeff's retirement benefits from his employment with Frances Marion University; (8) seventy-five percent of the retirement benefits in the TIAA-CREF retirement accounts arising from Jeff's employment with Sam Houston State University; (9) the 2003 Buick Rendezvous motor vehicle; and (10) fifty percent of the frequent flyer miles.

With respect to the parties' debts, the trial court ordered Jeff to pay the balance due on the promissory note executed on the marital residence; the balance on the Capital One and one of two Chase credit cards; fifty percent of the balance

3

due on the JC Penney credit card; all debts and other obligations incurred solely by Jeff after July 14, 2011, unless the decree expressly provides otherwise; all encumbrances, ad valorem taxes, liens, assessments, or other charges on the real and personal property awarded to Jeff unless the decree expressly provides otherwise; and the balance owed to Jeff's attorney for reasonable and necessary attorney's fees. The trial court ordered Robin to pay the balance due and owing on the US Bank credit card, Kohl's credit card, and the remaining Chase credit card; fifty percent of the balance due on the JC Penney credit card; the balance due and owing to Robin's uncle; all debts and other obligations incurred solely by Robin after July 14, 2011, unless the decree expressly provides otherwise; all encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to Robin; and the balance owed to Robin's attorney for reasonable and necessary attorney's fees.

The Family Code provides that a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." Tex. Fam. Code Ann. § 7.001 (West 2006). A trial court has wide latitude in dividing the estate of the parties, and may consider many factors in making a just and right division of the property. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981). In exercising its discretion, the trial

4

court may consider the spouses' capacities and abilities; benefits the party not at fault would have derived from continuation of the marriage; business opportunities; education; the parties' physical conditions; the parties' financial conditions and obligations; the size of the separate estates; the nature of the property; disparities in earning capacities and incomes; and fault in the breakup of the marriage. *Finch*, 825 S.W.2d at 222. Therefore, absent an abuse of discretion, we will not disturb the trial court's division of property on appeal. *Murff*, 615 S.W.2d at 698; *Ohendalski v. Ohendalsi*, 203 S.W.3d 910, 914 (Tex. App.—Beaumont 2006, no pet.). If the trial court's decision is supported by substantive and probative evidence, the trial court does not abuse its discretion by ordering an unequal division of the marital estate. *Ohendalski*, 203 S.W.3d at 914.

In its findings of fact and conclusions of law, the trial court concluded that "[t]he division of the estate of the parties as ordered in the Final Decree of Divorce . . . is just and right having due regard for the rights of each party and the children of the marriage." The trial court also found that Robin "has the ability to earn sufficient income to provide for her minimum reasonable needs." The trial court did not indicate in its findings and conclusions that it intended to divide the marital estate disproportionately. In fact, when announcing his ruling after trial, the trial judge stated that he intended to effect an equal division of the marital estate. Robin

5

essentially argues that the TIAA-CREF retirement fund from Jeff's employment at Sam Houston State University is not vested and the plan administrator refuses to divide or distribute it until it is vested. However, the record does not support Robin's contention, and she provides no record citation for this argument.

In addition, the record reflects that when the trial court announced its ruling, it initially decided to split the Sam Houston State University retirement equally between the parties, but decided to instead award 75% of that account to Robin after apparently taking into account Jeff's withdrawals from it to pay his attorney's fees. The record does not support Robin's argument that the trial court divided the marital estate disproportionately in favor of Jeff. Robin also does not challenge the trial court's findings of fact. We conclude that the trial court's property division was supported by sufficient evidence, and the trial court therefore did not abuse its discretion in dividing the marital estate between the parties. *See Ohendalski*, 203 S.W.3d at 914. Accordingly, we overrule issue one.

## ISSUES TWO AND THREE

In issue two, Robin argues that the trial court abused its discretion by giving Jeff the right to designate the children's primary residence "when the great weight and preponderance of the evidence showed the best interests of the children would be served by granting custody to the mother." In issue three, Robin contends that

the trial court abused its discretion by awarding "primary custody" of the younger child C.J.A. to Jeff "when the great weight and preponderance of the evidence showed the best interest of this child would be served by granting custody to the mother." We address issues two and three together.

At Robin's request, the trial court signed findings of fact and conclusions of law. *See* Tex. Fam. Code Ann. § 6.711 (West 2006). In its findings of fact, the trial court determined that Jeff would best provide for the children's physical, psychological, and emotional needs and development, now and in the future; Robin poses an emotional danger to the children; Jeff can provide a more stable home for the children, has better future plans for the children, and has "the better ability to give the children first priority and to reach shared decisions in the children's best interests[;]" Jeff was the children's primary caregiver prior to the suit and has better parenting skills; no clear and compelling reasons exist to separate the children; Robin's sexual conduct "affected her fitness to act as a parent as one of the children was exposed to such conduct on more than one occasion[;]" and naming Jeff as the conservator having the exclusive right to designate the children's primary residence is in the children's best interest. Robin does not challenge any of the trial court's findings of fact on appeal. In addition, Robin did

not request that the trial court enter any additional findings of fact or conclusions of law.

Robin argues in her brief that the testimony at the temporary orders hearing was based upon the "uncredentialed recommendations" of counselor Theresa Burbank to the trial court in chambers during the temporary orders hearing, and Robin had "a steep hill to climb to ever change the court's mind on these issues at final trial." Robin also contends that the evidence supported the conclusion that she is the parent most able to foster a positive relationship between the children and the other parent. In addition, Robin asserts that the older child D.E.A. had an advantage because D.E.A. had the right to express her wishes to the court, but C.J.A. did not necessarily have that right and was "caught up" in the trial court's decision to award custody of D.E.A. to Jeff.

The record reveals that near the beginning of the trial, when the trial judge asked whether either of the parties objected to the trial court considering all of the evidence from the temporary orders hearing, counsel for both parties stated that they had no objection. Therefore, Robin may not now complain of the trial court's consideration at the final hearing of the evidence adduced at the temporary orders hearing. *See* Tex. R. App. P. 33.1(a).

Findings of fact are binding on the appellate court unless they are challenged by an issue on appeal. *City of Beaumont v. Spivey*, 1 S.W.3d 385, 392 (Tex. App.—Beaumont 1999, pet. denied) (citing *Brown v. State Bar of Tex.*, 960 S.W.2d 671, 674 (Tex. App.—El Paso 1997, no writ)). As previously discussed, Robin has not challenged any of the trial court's fact findings on appeal.

The best interest of the child is always the primary consideration in determining issues of conservatorship, possession of and access to the child, and child support. Tex. Fam. Code Ann. § 153.002 (West 2008); *In re J.A.H.,* 311 S.W.3d 536, 541 (Tex. App.—El Paso 2009, no pet.). In determining the best interest of the child, we consider the public policies outlined in the Texas Family Code. *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). Section 153.001 of the Family Code states that the public policy of Texas is to (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, (2) provide a safe, stable, and nonviolent environment for the child, and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. Tex Fam. Code Ann. § 153.001(a)(l)-(3) (West 2008). Furthermore, the Family Code provides that it is preferable for all children of a marriage to be together during periods of possession. *Id*. § 153.251(c) (West 2008). With respect to determining

the best interests of the children, the Supreme Court has set forth a non-exhaustive list of several factors that courts may consider: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).

The trial court heard evidence that (1) Jeff has a more consistent, structured parenting strategy; (2) D.E.A. was exposed to Robin's sexual conduct because D.E.A. had seen on Robin's cell phone a nude photograph of Robin and a photograph of a man's sexual organ; (3) Jeff has a close relationship with both D.E.A. and C.J.A.; (4) Jeff altered his work schedule to enable him to transport the children to and from school; (5) Jeff believes it is important for parents to share important information; and (6) Jeff was the children's primary caregiver before the divorce was filed. The trial court also heard Robin testify that (1) Jeff's behavior

with D.E.A. was "inappropriate[;]" (2) C.J.A. had "unexplained marks" on his body; (3) Robin was the children's primary caregiver before the divorce, and D.E.A. was incorrect when she told the counselor otherwise; (4) Jeff had called Robin profane names in front of C.J.A.; (5) Robin planned to raise the children "in a nurturing, loving home, to . . . allow them to have the best education that's possible . . ., by exposing them to many different cultural things, . . . raising them in a household of religion, allowing them to make their own decisions on what they want to believe in. Allowing them to continue to have a sense of giving back to the community by volunteering . . .[;]" and (6) Robin "can provide them with structure and routine which they thrive on." The trial court also heard evidence from court-appointed licensed counselor Theresa Burbank, who testified concerning her observations of the family's relationships and dynamics during treatment of the children, Jeff, and Robin.

As the finder of fact, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 270-71 (Tex. App.—Fort Worth 2004, no pet.). Robin has not shown that the great weight and preponderance of the evidence indicated that the children's best interests would be served by Robin having the exclusive right to determine their residence, or by separating the children and awarding

11

custody of D.E.A. to Jeff and custody of C.J.A. to Robin. *See generally* Tex. Fam. Code Ann. § 153.251(c). We overrule issues two and three and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 26, 2013
Opinion Delivered December 12, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.