**Affirmed and Memorandum Opinion filed May 14, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00768-CV

### KEVIN P. KALEY, Appellant

### V.

### TERRI E. KALEY, Appellee

**On Appeal from the 411th District Court**
**San Jacinto County, Texas**
**Trial Court Cause No. DV13,678**

## MEMORANDUM OPINION

Kevin P. Kaley appeals from a final decree of divorce dissolving his marriage to Terri E. Kaley. Kevin contends that the trial court abused its discretion in finding Kevin, and not Terri, guilty of cruelty and in ordering a disproportionate division of the community estate. We affirm.[1]

---

[1] The Texas Supreme Court transferred this case from the Ninth Court of Appeals. Because of the transfer, we must decide the case in accordance with the precedent of the Ninth Court of Appeals if our decisions otherwise would have been inconsistent with that court's

## *Background*

Kevin and Terri married in 1986. They purchased their homestead during the marriage. The homestead included a home built on 70 acres. Kevin and Terri separated in March 2015. Terri filed for divorce in May.[2] In October, the trial court signed agreed temporary orders, which prohibited either party from incurring any debts other than for legal expenses or otherwise authorized by the order.

Approximately one year later, Terri obtained a protective order against Kevin based on evidence that he was stalking Terri: for example, Kevin purportedly placed tracking devices on Terri's car twice, trespassed into Terri's residence and left his hat there to intimidate her, sent Terri hundreds of "hateful and threatening emails," and texted Terri "between 50-100 times daily." Further, Kevin tried to access Terri's membership account at her gym and tried to get himself put on as account manager of Terri's cellular phone account. After Terri obtained the protective order, Kevin and Terri both amended their pleadings to allege cruel treatment and seek a disproportionate distribution of assets.

A copy of the protective order against Kevin was admitted at trial, along with Terri's application for a protective order and supporting affidavits. In Terri's affidavit, she recounted the above facts about Kevin stalking her. Terri also testified that before she got the protective order, she had gone on a business trip, and Kevin followed her to the airport. Also according to Terri, during the course of the marriage, Kevin once had "knocked [Terri] out of her shoes" and often called

---

precedent. *See* Tex. R. App. P. 41.3.

[2] In January 2015, the Kaleys sold 30 acres of the homestead to Kevin's mother Adrienne for $168,000, which Kevin testified he split evenly with Terri. In September, Kevin and Adrienne signed a "Lease to Purchase Option Agreement" pursuant to which Adrienne agreed to lease the 30 acres back to Kevin and Terri with a ten-year option to purchase the land. Kevin took out a $50,000 bank loan to make payments to his mother under the agreement. Terri did not sign the agreement and did not seek an interest in the agreement in the divorce.

her derogatory names and falsely accused her of infidelity. Terri's sister Tina also testified that Kevin often called Terri derogatory names and was aggressive to Terri and others. Tina said, "I've seen him yell at her, scream and holler at her, lunge at her."

Kevin denied the physical abuse. He had alleged infidelity but admitted at trial that he did not know whether Terri had had affairs but stated he "had a bad feeling because [Terri] drank so much." He testified that on the weekends, Terri would stay out drinking and would not come home until early in the morning.

As far as the parties' assets, Terri testified that the homestead was worth $465,000, consistent with an appraisal obtained by the parties. Kevin testified that he had spent "[o]ver $200,000" in upkeep on the property since Terri had filed the divorce petition. Terri testified that she and Kevin owned two Lexus vehicles and a Chevrolet Suburban. She sought spousal support.

During the marriage, Kevin had a floor installation business. He testified at trial that at most, the business had generated about $80,000 in revenue per year but in the last couple years, it had generated only between $25,000 and $30,000 in revenue. Terri testified to the contrary that Kevin's business generated "probably [$]200,000 [in revenue] a year." Kevin evaluated the business inventory at approximately $2,000.

Terri managed the floor installation business. She testified that she "did everything other than do the" physical labor and make the deposits. Terri also worked for a business owned by her family and testified that her annual salary, which consisted of salary plus commissions, totaled approximately $32,000 the year before trial.

Kevin accrued $18,500 in debt on a Chase credit card after the parties

3

separated. Terri testified that she had paid approximately $11,000 in interest and fees on that credit card for charges that were made solely by Kevin. At the time of trial, the balance on the card was nearly $16,000. Also at that time, Kevin had an American Express account with a balance of approximately $46,000 that he described as "my credit card debt." He also testified that he used what he referred to as "my American Express" to purchase flooring products for the business.

The trial court (1) granted Terri a divorce from Kevin and dissolved the marriage on the ground of Kevin's cruelty; (2) ordered the sale of the marital residence and ordered a division of the proceeds of the sale 70 percent to Terri and 30 percent to Kevin; (3) awarded Terri the Lexus vehicles, which were both 2007 models; and (4) awarded Kevin the 2001 Suburban, a 2000 Toyota Tundra, and a 1991 Ford F-350, along with a tractor, an all-terrain vehicle, two trailers, a rotary cutter, and a bale carrier. The trial court also assigned the debt as follows: (1) the note on one of the Lexus vehicles was assigned to Terri, along with debts incurred solely by Terri after the parties separated; and (2) the Chase and American Express credit card debt referenced above was assigned to Kevin, along with debts incurred solely by Kevin after the separation. Attorney's fees were awarded to Terri. No spousal support was ordered. At the conclusion of trial, the trial court also orally awarded Terri her interest in her family business and awarded Kevin the flooring business.[3]

### *Discussion*

In one issue, Kevin asserts that the trial court abused its discretion in finding him guilty of cruelty and in ordering a disproportionate division of the community

---

[3] Terri testified that she did not own an interest in her family business at the time of trial. She testified that she would eventually inherit half the business. Under Texas law, property acquired by inheritance is separate property. Tex. Const. art. XVI, § 15; Tex. Fam. Code § 3.001(2).

estate. Kevin concedes that he was guilty of cruelty but argues the trial court also should have found Terri guilty of cruelty.

The Texas Family Code requires the trial court in a divorce proceeding to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. Generally, a divorce court has wide latitude in the exercise of its discretion to divide the marital estate. *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 914 (Tex. App.—Beaumont 2006, no pet.). Thus, we review a trial court's division of property under an abuse of discretion standard. *Id*. Legal and factual sufficiency are relevant factors, rather than independent bases for reversal, in determining whether the trial court abused its discretion. *Stewart v. Stewart*, No. 09-18-00142-CV, 2018 WL 2343215, at *3 (Tex. App.—Beaumont May 24, 2018, no pet.) (mem. op.); *In re A.D.H.*, 979 S.W.2d 445, 446 (Tex. App.—Beaumont 1998, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision. *Ohendalski*, 203 S.W.3d at 914.

The division of the marital estate need not be equal, and fault is one of the many factors that a trial court may consider in making a division of the community estate. *Id*. Generally, in a fault-based divorce, the court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate. *Id*. The grounds available for a fault-based divorce specifically include cruelty. *Id*.; *see also* Tex. Fam. Code § 6.002. The party challenging the division bears the burden of demonstrating from the evidence in the record that the trial court's division was "so unjust and unfair as to constitute an abuse of discretion." *Tran v. Nguyen*, 480 S.W.3d 119, 132 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Johnson v. Johnson*, No. 09-13-00537-CV, 2014 WL 5855916, at *2 (Tex. App.—

5

Beaumont Nov. 13, 2014, no pet.) (mem. op.).

The evidence in the record supports Terri's claim of cruelty. Not only did Terri present evidence that Kevin physically abused her, frequently called her derogatory names, and regularly falsely accused her of adultery, Terri was also forced to obtain a protective order against Kevin for stalking her and trespassing on her property. *See Ohendalski*, 203 S.W.3d at 914 (holding evidence of adultery and cruelty supported trial court's unequal division of estate); *Barnard v. Barnard*, 133 S.W.3d 782, 786-87 (Tex. App.—Fort Worth 2004, pet. denied) (holding trial court's finding in protective order that husband committed family violence was evidence supporting finding of cruelty). Our sister court has upheld disproportionate awards when the grounds for divorce include cruelty. *See Ohendalski*, 203 S.W.3d at 914 (affirming award of 81 percent of marital estate to wife); *Golias v. Golias*, 861 S.W.2d 401, 403 (Tex. App.—Beaumont 1993, no writ) (upholding award of 79 percent of marital estate to wife).

Although Kevin alleged that Terri was also cruel, the trial court, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, was entitled to accept Terri's testimony and disbelieve Kevin's. *See Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Kevin contends that Terri was guilty of cruelty because his Aggie ring purportedly mysteriously disappeared and Terri allegedly committed adultery. There is no evidence in the record that Terri intentionally took Kevin's ring, and she agreed during trial to return it if she ever found it. Also, Kevin admitted at trial that he did not know whether Terri had had affairs: he just had a "bad feeling because she drank so much." Thus, the trial court's refusal to find Terri guilty of cruelty is supported by some evidence.

Kevin's complaint is based on a computation that the trial court awarded

6

Terri 70 percent of the sale of the marital homestead and assessed only approximately 7.5 percent of the "community debt" against her.[4] This is not everything the trial court ordered. The trial court awarded Kevin his flooring business, which he testified generated between $25,000 to $80,000 in revenue per year. Terri testified the business generated up to $200,000 in revenue per year. Although Terri managed the business, the trial court did not award any portion of it to her. The trial court awarded Terri only two of the family's eleven motor vehicles, and one of the vehicles she was awarded carried a $5,700 note. Moreover, the trial court awarded each party several items of personal property and the sums of cash subject to their sole control.

As to the division of debt, the trial court assessed the debt on the Lexus to Terri, along with any debts she incurred after the date of the divorce filing. The trial court assessed the $18,000 Chase credit card debt against Kevin that he conceded at trial was his sole debt and the $46,000 credit card debt charged on his American Express account that he testified was used to purchase flooring products for the business that was awarded to him. *See Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013) ("[O]ne spouse is not liable for the other's debt unless the other incurred it as the one's agent or the one failed to support the other and the debt is for necessaries."). The trial court also assessed any debts against Kevin that he incurred after the date of the divorce filing.

Kevin further complains that the trial court awarded Terri approximately $13,000 in attorney's fees. But the trial court is entitled to assess attorney's fees in effecting a just and right division of the estate. *Murff v. Murff*, 615 S.W.2d 696,

---

[4] The supreme court has noted that the term "community debt" is a concept often misused to impose liability on a spouse who did not incur the debt. *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 654 (Tex. 2013). As discussed below, the trial court assessed debt against Kevin that he incurred solely.

699 (Tex. 1981).

In dividing the community property, the trial court was permitted to consider many factors, including fault in breaking up the marriage, the spouses' capacities and abilities, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity of ages, sizes of separate estates, the nature of the property, and disparity in earning capacities or incomes. *Id*. For example, the trial court could consider the fact that Terri did not have a college degree and Kevin had a degree from Texas A&M University and take into account any potential disparity in their earning capacities due to that fact. Terri, moreover, was not awarded any part of the flooring business and would not stand to inherit a portion of her family business until some indefinite time in the future. Kevin had the burden of demonstrating based on evidence in the record that the trial court's division was so unjust and unfair as to constitute an abuse of discretion. *See Johnson*, 2014 WL 5855916, at *2. Based on the evidence in this record, Kevin has failed to do so.

Indeed, based on this record, Kevin has not demonstrated that the trial court made an unequal division of the estate. Kevin argues that there is no evidence in the record of the value of the flooring business. But Kevin and Terri both gave their assessment of the annual revenue of the business. The trial court was entitled to weigh the credibility of their conflicting testimony. *See, e.g., Banker v. Banker*, 517 S.W.3d 863, 872 (Tex. App.—Corpus Christi 2017, pet. denied) (holding business owner could opine on value of business when based on personal knowledge); *Coker v. Burghardt*, 833 S.W.2d 306, 309–10 (Tex. App.—Dallas 1992, writ denied) (acknowledging trial court may consider "lay opinion about [business] value if the witness has personal knowledge of facts forming the opinion and a rational connection exists between the opinion and the facts—and if the

8

opinion is helpful").[5] Kevin also contends there is no evidence of the value of the vehicles "and other assets." As noted, the trial court awarded Kevin nine of eleven vehicles and reasonably could have concluded such a division was just and right. Moreover, the sufficiency of the evidence is merely one factor in light of the many factors that the trial court was entitled to consider. *See Stewart*, 2018 WL 2343215, at *3.

For these reasons, we overrule Kevin's sole issue presented on appeal.

### *Conclusion*

We affirm the judgment of the trial court.

/s/    Frances Bourliot
Justice

Panel consists of Justices Wise, Jewell, and Bourliot.

---

[5] Neither party objected to Kevin's or Terri's testimony regarding business revenue.