# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0767
═══════════

MICHAEL ROBERT TEDDER, PETITIONER,

v.

GARDNER ALDRICH, LLP, RESPONDENT

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════

**Argued November 7, 2012**

JUSTICE HECHT delivered the opinion of the Court.

JUSTICE LEHRMANN did not participate in the decision.

The principal question in this case is whether legal services provided to one spouse in a divorce proceeding are necessaries for which the other spouse is statutorily liable to pay the attorney. We answer no and therefore reverse the court of appeals' judgment[1] and affirm the trial court's judgment.

Michael Tedder sued his wife, Stacy Tedder, for divorce and custody of their two children. After nearly two years of contentious litigation, a jury found that the couple should be joint

---

[1]   S.W.3d   (Tex. App.–Fort Worth 2011) (mem. op.).

managing conservators of their children, and the parties then settled all the other issues between them.

Stacy hired Gardner Aldrich, LLP to represent her in the proceedings. Her contract with the firm provided that it would "seek to have the court order your husband to pay for all legal fees incurred by you, but . . . this is a matter in the Court's discretion and . . . you remain directly liable to the firm for payment for legal services rendered." After the jury verdict, Gardner Aldrich withdrew as Stacy's counsel and then intervened in the case, suing both Stacy and Michael for its fees.[2] The firm had already been paid $50,000 from the community estate and claimed an additional $151,747.28. Gardner Aldrich couched its claim in part as a sworn account.[3] Michael and Stacy denied the firm's claim, but not under oath.

After a hearing, the trial court indicated that it would allow Gardner Aldrich to recover only against Stacy and would order Michael to pay Stacy $190,000 for her attorney fees. It was then that Michael and Stacy settled, agreeing, among other things, that the final decree would award Gardner Aldrich attorney fees against Stacy only and would not award Stacy attorney fees against Michael.

---

[2] The intervention was improper. A person may intervene in an action if (1) he could have brought the action himself, or it could have been brought against him; (2) "the intervention will not complicate the case by an excessive multiplication of the issues"; and (3) "intervention is almost essential to effectively protect the intervenor's interest." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). Gardner Aldrich certainly did not meet the first requirement. It probably did not meet the second, since the interjection of its claim added issues to the divorce proceeding and delayed its final resolution. And it did not meet the third, inasmuch as it could have sued Michael and Stacy in a separate action. But Rule 60 of the Texas Rules of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party", and neither Michael nor Stacy moved to strike the intervention.

[3] *See* TEX. R. CIV. P. 185.

The trial court rendered judgment in accordance with their agreement. Not long afterward, Stacy

sought the protection of the bankruptcy court and was eventually discharged.

Gardner Aldrich appealed. As a procedural matter, the court of appeals held that Michael's

failure to deny Gardner Aldrich's claim under oath did not entitle the firm to judgment.[4] On the

substance of the firm's claim, the court held that Michael was liable for Stacy's legal fees for two

reasons: the obligation was a "community debt" for which both spouses were jointly and severally

liable,[5] and the legal fees were "necessaries" for which Michael was liable to the firm under Section

2.501 of the Texas Family Code.[6] Accordingly, the court rendered judgment for Gardner Aldrich

against Michael and Stacy jointly and severally.[7]

We granted Michael's petition for review.[8]

Gardner Aldrich argues, as it did in the court of appeals, that Michael is precluded from

defending against its claim because it is supported by affidavit and not denied under oath. The firm

bases its argument on Rule 185 of the Texas Rules of Civil Procedure, which provides in pertinent

part:

> When any action . . . is founded upon a[] . . . claim . . . for personal service rendered,
> . . . and is supported by the affidavit of the party, . . . the same shall be taken as prima
> facie evidence thereof, unless the party resisting such claim shall file a written denial,

---

[4] ___ S.W.3d at ___.

[5] *Id.* at ___.

[6] *Id.* at ___.

[7] *Id.* at ___.

[8] 55 Tex. Sup. Ct. J. 664 (May 11, 2012).

3

under oath. A party resisting such a sworn claim . . . [who] does not timely file a written denial, under oath, . . . shall not be permitted to deny the claim . . .

But Rule 185 contemplates that the defendant has personal knowledge of the basis of the claim, as our 1883 decision in *McCamant v. Batsell*[9] makes clear.

In that case, Batsell sued McCamant for reimbursement of amounts he had paid others acting as McCamant's surety.[10] Though Rule 185 had not been adopted, the same procedure was prescribed by statute.[11] We held that because a suretyship could exist only by contract, Batsell's action was for breach of contract, not on a sworn account.[12] And as for whether McCamant was required to file a sworn denial disputing Batsell's payments to McCamant's creditors, we said:

> The law does not permit, much less encourage, guesswork in swearing; and to require a defendant to swear that a transaction between a plaintiff and a third person, of which he may have no personal knowledge whatever, either did or did not occur in whole or in part, before he will be permitted to controvert the *ex parte* affidavit of his adversary, would be to encourage swearing without knowledge, which is morally perjury, or in some cases to forego a just defense, which might be clearly established under the well settled rules of evidence.[13]

---

[9] 59 Tex. 363 (1883).

[10] *Id.* at 366.

[11] Tex. Rev. Civ. Stat. art. 2266 (1879) ("When any action . . . is founded upon an open account, supported by . . . affidavit . . . , the same shall be taken as *prima facie* evidence thereof, unless the defendant shall . . . file a written denial under oath . . . . Where he fails to file such affidavit he shall not be permitted to deny the account . . . ."), recodifying Act approved April 2, 1874, 14th Leg., R.S., ch. 53, § 1, 1874 Tex. Gen. Laws 52, *reprinted in* 8 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822-1897, at 52 (Austin, Gammel Book Co. 1898).

[12] *Id.*

[13] *Id.* at 371.

Gardner Aldrich dismisses this statement as dicta and seeks support from *Rizk v. Financial Guardian Insurance Agency*.[14] There, a defendant filed a sworn denial of the verified claim, asserting among other things that he had neither requested nor agreed to pay for the items made the basis of the claim.[15] The issue was not whether a sworn denial was necessary but whether it was too general or inconsistent with other asserted defenses.[16] We held it was not.[17]

Our statement in *McCamant* was sound. When it appears from the plaintiff's account itself that the defendant was a stranger to the account, the defendant need not file a sworn denial to contest liability.[18] Michael had no agreement with Gardner Aldrich, never promised to pay for its representation of Stacy, and because of the attorney-client privilege, had no way of knowing what charges had been made or what had been paid (other than the $50,000 paid from the community estate). Rule 185 does not require a party to swear to what he does not and cannot know. We thus agree with the court of appeals that Michael was not required to deny Gardner Aldrich's claim under oath in order to contest his liability for its fees.

The court of appeals held that Michael is liable to Gardner Aldrich for Stacy's attorney fees because they were a "community debt", a concept often misused to impose liability on a spouse who

---

[14] 584 S.W.2d 860 (Tex. 1979).

[15] *Id.* at 862.

[16] *Id.* at 861.

[17] *Id.* at 863.

[18] *Sundance Oil Co. v. Aztec Pipe & Supply Co.*, 576 S.W.2d 780, 781 (Tex. 1978) (per curiam) ("There being a fact question as to whether the defendant was a party to the transaction . . . the sworn account is not considered as prima facie proof of the debt. Therefore, a sworn denial is not required in order for the respondent to controvert or disprove the account.").

did not incur the debt. Confusion over the significance of "community debt" has been ascribed to our opinion in *Cockerham v. Cockerham*, where we said that "debts contracted during marriage are presumed to be on the credit of the community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction."[19] We immediately added: "[T]he fact that the debts are community liabilities would not, without more, necessarily lead to the conclusion they were joint liabilities. Characterization of the debts as community liabilities is only one aspect of the circumstances to be considered in determining whether the debts are joint."[20] But the first statement, and the entire analysis, has proved misleading. As Professor Joseph McKnight explained thirty years ago:

> Much of the judicial discussion of "community debt" is based on the erroneous supposition that all "community debts" are equally shared by the spouses whether they are both makers of the debt or not. That supposition is not warranted by the basic principles of Texas law. Apart from the context of acquiring necessaries, debt incurred by only one spouse does not affect the other spouse at all except that it makes the nonobligated spouse's share of community property liable for payment if the property sought for payment is subject to the sole or joint management of the spouse who incurs the debt.

> \*     \*     \*

> It is high time that the community debt argument be put to rest. The phrase "community debt" has long been useful in characterizing borrowed money or property that a spouse buys on credit. If the lender or seller does not specifically look to the borrower's or buyer's separate property for payment, it is clear that a community debt has been incurred, and thus that the money borrowed or property bought is community property. But to take the phrase out of this context, as well as to say that the designation of such a debt as "community" makes both spouses liable for it (when only one of them has contracted it), is clearly contrary to the express

---

[19] 527 S.W.2d 162, 171 (Tex. 1975).

[20] *Id.*

6

terms of section 5.61 [of the Family Code, currently Section 3.202]. Under Texas law as amended and recodified in 1969, a community debt means nothing more than that some community property is liable for its satisfaction.[21]

Professor Featherston has succinctly observed, "[m]arriage itself does not create joint and several liability."[22] These and other commentators agree that one spouse's liability for debts incurred by or for the other is determined by statute.[23] We agree.

Section 3.201(a) states:

A person is personally liable for the acts of the person's spouse only if:

(1)    the spouse acts as an agent for the person; or

(2)    the spouse incurs a debt for necessaries as provided by [Section 2.501].[24]

---

[21] Joseph W. McKnight, *Family Law: Husband and Wife*, 37 Sw. L.J. 65, 76-77 (1983). Gardner Aldrich's argument based on Section 3.202(c) suffers the same flaw as the court of appeals' community debt rationale. Section 3.202(c) provides only that "[t]he community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage." Tex. Fam. Code § 3.202(c). The effect of the provision is that Stacy's legal fees might have been paid from community property. It does not impose liability on Michael.

[22] Tom Featherston & Allison Dickson, *Marital Property Liabilities: Dispelling the Myth of Community Debt*, 73 Tex. Bar J. 16, 19 (2010).

[23] *See, e.g.*, John J. Sampson et al., Sampson & Tindall's Texas Family Code Annotated 35 (21st ed. 2011) ("Section 3.201, regarding personal liability of the spouses, is specifically intended to clarify the misleading and confusing discussion in *Cockerham v. Cockerham*."); James W. Paulsen, *Acquiring Separate Property on Credit: A Review and Proposed Revision of Texas Marital Property Doctrine*, 37 St. Mary's L.J. 675, 715 n.191 (2006) ("[Section 3.201] is widely regarded as a legislative reaction to, and repudiation of *Cockerham*'s reasoning.") (citing, *inter alia*, an earlier edition of Sampson & Tindall); Thomas Featherston, Jr. & Lynda S. Still, *Marital Liability in Texas . . . Till Death, Divorce, or Bankruptcy Do They Part*, 44 Baylor L. Rev. 1, 16 (1992) ("Recent legislation should be interpreted as putting an end to the *Cockerham* test. [Section 3.201's predecessor] provides that one spouse will not be personally liable for the acts of the other spouse by reason of the marital relationship. Instead a spouse is liable only if the other spouse acts at the agent of the otherwise innocent spouse or if the other spouse incurs a debt for 'necessaries.' This 'anti-*Cockerham*' statement appears to clarify the previously murky waters regarding the personal liability of one spouse for debts of the other."); McKnight, 37 Sw. LJ. at 77.

[24] Tex. Fam. Code § 3.201(a).

Section 2.501 states:

> (a)    Each spouse has the duty to support the other spouse.
>
> (b)    A spouse who fails to discharge the duty of support is liable to any person who provides necessaries to the spouse to whom support is owed.[25]

Thus, one spouse is not liable for the other's debt unless the other incurred it as the one's agent or the one failed to support the other and the debt is for necessaries. Applied to this case, Michael is not liable to pay Gardner Aldrich for legal services it rendered to Stacy unless those services were necessaries.[26]

We have suggested that a spouse's necessaries are things like food, clothing, and habitation[27] — that is, sustenance — and we have squarely rejected the view that a spouse's legal fees in a divorce proceeding fall into this category. In *Carle v. Carle* we stated:

> [I]t is not a correct approach . . . to classify the wife's attorney's fees as a necessity, and then apply the rule that necessities are primarily the obligations of the community and secondarily of the husband's separate estate. . . . [T]he trial court [has discretion] in determining the proper division of the community estate of the parties. . . . The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances.[28]

---

[25] *Id.* § 2.501.

[26] Gardner Aldrich argues that Michael failed to support Stacy because he did not provide her funds to pay its fees. We need not consider this argument.

[27] *Francis v. Francis*, 412 S.W.2d 29, 31 (Tex. 1967).

[28] 234 S.W.2d 1002, 1005 (Tex. 1950).

The court of appeals overlooked *Carle*, as have others.  To the extent those opinions are inconsistent with today's decision, we disapprove them.[29]

The trial court would have done as *Carle* instructed, requiring Michael to pay Stacy for her attorney fees, but the parties then agreed on a different result.  The trial court was correct in rendering the decree on which Michael and Stacy agreed and refusing to order Michael to pay Stacy's attorney fees.  Accordingly, we reverse the judgment of the court of appeals and render judgment that Gardner Aldrich take nothing.

Nathan L. Hecht
Justice

Opinion delivered:     May 17, 2013.

---

[29] Section 106.002 of the Family Code authorizes a trial court in a suit affecting the parent-child relationship to "render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney", and provides that "[a] judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt."  Gardner Aldrich does not claim under this provision, and we do not consider its application.  Nor do we consider whether legal services can be considered necessaries for a child.

9