# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00017-CV

---

**Gilbert Estrada, Jr., Appellant**

**v.**

**Dana Deann Garrett-Estrada, Appellee**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-000953, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Gilbert Estrada, Jr. appeals from the trial court's final decree of divorce.[1]  In two issues, Gilbert challenges provisions of the decree that require him to pay portions of the credit card debt and retroactive child support.  For the following reasons, we affirm the trial court's final decree of divorce.

## BACKGROUND

The parties married in 2000 and have four children.  The parties ceased living together in January 2020, Gilbert petitioned for divorce in February 2020, and Dana counter-petitioned in April 2020.  One of their children was not addressed in their petitions because he had reached the age of emancipation.  The other children are Nathan (born in 2002), Anna (born in 2006), and Ingrid (born in 2008).

---

[1] Because the parties have similar last names, we refer to them by their first names.  To protect the children's privacy, we refer to them by pseudonyms.

Before the final hearing in June 2021, the parties entered into a Rule 11 agreement that settled their disputes, except as to retroactive child support and credit card debt.[2] They agreed that "the party with lesser income per either agreement or the Court's determination as to statutory net resources shall have the right to off-setting child support" but that "the issue of retroactive support will be tried" and that "[h]ow the credit card debt is divided will be tried." At the beginning of the final hearing, the parties read the Rule 11 agreement into the record, and the trial court approved it. During the final hearing, the trial court took judicial notice of its file, and the parties stipulated that Dana was seeking retroactive child support beginning in September 2020.

The parties at the final hearing testified about their finances and possession and care of their children. The evidence showed that after the parties separated, Nathan lived with Gilbert, Anna primarily lived with Dana, and Ingrid alternated staying at the parties' homes; Nathan turned 18 and then graduated from high school the month before the final hearing; Dana was employed during the case but struggled financially; Gilbert was unemployed from March 31, 2020, until "towards the end of September of 2020"[3]; the parties' debts exceeded their assets; and no child support was paid during the case.[4]

---

[2] The Rule 11 agreement also did not resolve the parties' dispute concerning the children's health insurance, but on appeal, Gilbert has not challenged the trial court's ruling on this issue.

[3] The record reflects that Gilbert received unemployment benefits from March 29 to September 12, 2020. Dana testified that she was not requesting retroactive child support when Gilbert was unemployed and answered, "Yes," when asked, "So just from the time that he was employed on a contract basis in September until now."

[4] Dana testified that Gilbert occasionally would give her $50 or $100 if she asked "repeatedly, and over days" and that he initially provided fast food lunches "almost every day" when Dana "was at work" for Anna and occasionally for Ingrid when she was at Dana's home.

2

Dana testified that she was employed as an elementary school teacher earning $4,635 per month and that her income "went to taking care of the children's needs predominantly and [her] car payment." She testified that she was "struggling financially just to pay rent and medical and buy groceries"; she was going to food pantries; she was "selling [her] plasma to get money for food"; and her vehicle was repossessed in February because she "was choosing to spend that money on some food and medications for the kids." Concerning possession and care of the children, Dana testified that after the separation, Anna moved with her to an apartment, and Dana's mother also moved in with them temporarily for several months because Anna needed 24-hour care and attention and Dana needed to work. Anna stayed with Dana "100 percent" of the time except for several weeks on two different occasions when she stayed with Gilbert, and Ingrid lived a "week on/week off" between the parties' homes. Concerning her credit card debt, Dana testified that "easily 90 percent" of the debt was spent on the children's needs and that the debt "was already in place" when the parties separated except for debt on her Macy's card for some "very inexpensive flatware for the kitchen because [she] left everything at home when [she] moved out." She testified that the debt "goes toward providing clothes for the four children"; expenses to help their oldest child move to college and a college fee of "over $5,000"[5]; medications for Anna and herself; and "the children's needs, whatever they may have been, medical, clothing, activities prior to COVID."

Substantially consistent with Dana's testimony, Gilbert testified that Nathan lived with him during the parties' separation, that Anna had stayed with him for some weeks starting

---

[5] Dana testified that Gilbert asked her to charge the fee of over $5,000 on her credit card and "ensured [her] that [they], together, would pay that off."

in October 2020 and on another occasion, and that Ingrid alternated between the parties' homes. Gilbert, who is an engineer, testified that from September to December 2020, he earned $600 a day and worked seven days a week in a contract capacity. Beginning in January 2021, he earned $550 a day and worked five days a week in a contract capacity until he obtained a position in May 2021 with an annualized salary of $90,000. As to the credit card debt, Gilbert testified that he should not be ordered to pay the debt that was incurred by Dana because "a large portion" was for "just items" that Dana "purchased on Amazon" that they "received . . . almost every single day" during their marriage and that she continued to purchase. He agreed that he was aware that the charges were "incurred for [his] household" and that the credit card debt included the payment of college tuition for their oldest child but testified that the oldest child borrowed money and gave it to Dana "to pay the majority of that back."

The parties submitted post-trial briefing, providing the trial court with proposed divisions of their assets and debts including the division of their credit card debt and calculations to support their competing proposals for the amount of retroactive child support. In their proposed divisions of their assets and debts, the parties represented to the trial court that their debts were greater than their assets.

In August 2021, the trial court informed the parties by letter of its rulings on the amount of retroactive child support and the division of the credit card debt, and in December 2021, the trial court signed its final decree consistent with its letter ruling. In the final decree, the trial court ordered Gilbert to pay monthly child support of $486.97, beginning on July 1, 2021.[6] Because Nathan had reached the age of emancipation at the time of the final

---

[6] The amount of child support going forward was based on the parties' agreement to a shared possession schedule for Anna and Ingrid and offsetting child support arrived at by

4

hearing, the trial court did not make orders concerning him in the final decree. In addition to awarding child support going forward, the trial court awarded retroactive child support of $10,549.46, which was the amount that Dana had proposed.[7] The trial court ordered Gilbert to pay this amount over two years, "if necessary, beginning on January 1, 2022," but "as soon as possible."

In its division of the parties' marital estate, the trial court ordered Gilbert to pay approximately 60% and Dana to pay approximately 40% of their combined credit card debt. Dana was ordered to pay $12,604 on seven credit cards in her name, and Gilbert was ordered to pay $19,345, which was toward a credit card in Dana's name that was in the amount of $14,259 and the remainder toward the debt on credit cards in his name.[8]

After the trial court signed the final decree of divorce, Gilbert requested findings of fact and conclusions of law but did not file a notice of past due request for findings of fact and conclusions of law, and the trial court did not file findings or conclusions. *See* Tex. R. Civ. P. 296, 297. This appeal followed.

---

calculating the obligations of each parent with Gilbert, the parent having the higher obligation, paying the difference to Dana, the parent with the lower obligation.

[7] Dana's calculation of retroactive child support was based on three children, Gilbert's monthly income of $9,200 from August 2020 to April 2021 and $7,500 for May 2021, and Dana's monthly income of $4,076.16. Based on these numbers, Dana calculated $1,020.98 as the monthly offsetting child support from August 2020 to April 2021 and $737.21 for May 2021 for a total offsetting amount of retroactive child support of $10,549.46.

[8] The trial court also provided that Gilbert could try to negotiate a lesser amount with the credit card company on the balance owed.

5

## ANALYSIS

### Credit Card Debt

In his first issue, Gilbert challenges the trial court's ruling that he "be ordered to pay credit card debt in the name of [Dana]." Specifically, he argues that the trial court abused its discretion when it ordered him to pay $14,259 of debt on Dana's credit card. He argues that the evidence "was legally and factually insufficient to impose any liability on [him] for a contractual liability of [Dana]," that there was no evidence or testimony as to the nature of the debt, that it was uncontroverted that the credit card was in her name, that "she did not act as an agent for [him] in incurring said debt," and that there is no statutory basis for ordering him to pay Dana's contractual liabilities.

#### *Standard of Review*

We review a trial court's division of the marital estate for abuse of discretion, and the trial court has broad discretion in making this division. *See Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). "On appeal, we presume that the trial court exercised this discretion properly and will reverse the cause only where there is a clear abuse of discretion." *Ashraf v. Ashraf*, No. 03-11-00467-CV, 2012 Tex. App. LEXIS 4345, at *21 (Tex. App.—Austin May 24, 2012, no pet.) (mem. op.) (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)); *see, e.g.*, *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981) (observing that "[m]athematical precision in dividing property in a divorce is usually not possible" and that "[w]ide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse").

6

"Under the abuse of discretion standard, a lack of legally or factually sufficient evidence does not constitute an independent ground for asserting error; instead, it is a relevant factor in determining whether the trial court abused its discretion." *Mathis v. Mathis*, No. 01-17-00449-CV, 2018 Tex. App. LEXIS 10432, at *7 (Tex. App.—Houston [1st Dist.] Dec. 18, 2018, no pet.) (mem. op.) (citing *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied)); *accord O'Carolan*, 71 S.W.3d at 532. "When a sufficiency review overlaps the abuse-of-discretion standard, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information to exercise its discretion and (2) whether the trial court erred in its application of discretion." *Mathis*, 2018 Tex. App. LEXIS 10432, at *7 (citing *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 206 (Tex. App.—El Paso 2003, no pet.)). "The traditional sufficiency review comes into play under the first prong." *Id.*

Further, because findings of fact and conclusions of law were not filed, it is implied that the trial court made all findings necessary to support its judgment. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re J.H.*, 264 S.W.3d 919, 923 (Tex. App.—Dallas 2008, no pet.); *In re R.G.G.*, No. 03-04-00445-CV, 2005 Tex. App. LEXIS 2373, at *3 (Tex. App.—Austin Mar. 31, 2005, no pet.) (mem. op.). In this context, the judgment must be affirmed if it can be upheld on any legal theory supported by the evidence. *See Worford*, 801 S.W.2d at 109. And we view the evidence in the light most favorable to the trial court's decision. *Id.*

*Did the trial court abuse its discretion in its division of the parties' credit card debt?*

As support for his contention that the trial court abused its discretion in awarding the disputed credit card debt to him, Gilbert relies on sections 2.501 and 3.201(a) of the Texas Family Code. Section 3.201(a) states that

> A person is personally liable for the acts of the person's spouse only if: (1) the spouse acts as an agent for the person; or (2) the spouse incurs a debt for necessaries as provided by Subchapter F, Chapter 2.

Tex. Fam. Code § 3.201(a). Section 2.501 states that "[e]ach spouse has the duty to support the other spouse" and that "[a] spouse who fails to discharge the duty of support is liable to any person who provides necessaries to the spouse to whom support is owed." *Id.* § 2.501. These statutory provisions, however, concern a spouse's liability to third parties. *See, e.g.*, *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013) (observing that marriage does not create joint and several liability and discussing sections 3.201(a) and 2.501 of Texas Family Code in context of dispute between law firm and husband over whether husband was liable to law firm for legal services it rendered to wife); *Envision Realty Grp., LLC v. Chen*, No. 05-18-00613-CV, 2020 Tex. App. LEXIS 1959, at *4–5 (Tex. App.—Dallas Mar. 5, 2020, no pet.) (mem. op.) (stating that section 3.201 of Texas Family Code precluded ex-wife's liability for ex-husband's actions and determining that ex-wife was not liable for third party's judgment against ex-husband).

Gilbert has not cited, and we have not found, authority that would support the application of these statutory provisions to the trial court's division of the parties' credit card debt in the context of its division of the parties' marital estate. *See* Tex. Fam. Code § 7.001 (requiring trial court to "order a division of the estate of the parties in a manner that the court

8

deems just and right, having due regard for the rights of each party and any children of the marriage"); *see Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (defining "just," "right," and "due regard"). The parties' proposed divisions of their estate included addressing their combined credit card debts,[9] and the trial court divided that debt roughly 60% to Gilbert and 40% to Dana.

The evidence supports the trial court's implied finding that the division of the credit card debt in the context of its division of the marital estate was just and right. *See* Tex. Fam. Code § 7.001. In weighing the rights of the parties and the children, the trial court could have credited the evidence of the parties' disparity in earning capacities and income, Gilbert's testimony that he was aware that charges were "incurred for [his] household," and Dana's testimony that "easily 90 percent" of her credit card debt was spent on the children's needs and "already in place" when the parties separated, including payment of college tuition for their oldest child. *See Bradshaw*, 555 S.W.3d at 543 (explaining that "the court is to do complete equity as between the husband and wife and the children, having due regard to all obligations of the spouses and to the probable future necessities of all concerned"); *Murff*, 615 S.W.2d at 699 (stating that it was proper for trial court to consider disparity of earning capacities or of income in division of marital estate).

---

[9] To the extent that Gilbert complains about the lack of documentary evidence to support the balance owed on the credit card, Gilbert listed the outstanding balance of $12,320 on his proposed property division, and Dana listed the amount of $14,259 on her proposed property division. The trial court, however, tied Gilbert's assigned debt to the actual credit card account and authorized Gilbert to negotiate with the credit card company to lessen the balance owed. Thus, it follows that Gilbert's liability is limited to the actual balance owed up to but not more than $14,259.

9

On this record, we conclude that the trial court had sufficient evidence on which to exercise its discretion and that it did not abuse that discretion by ordering Gilbert to pay $14,259 of the debt on the credit card in Dana's name. *See Murff*, 615 S.W.2d at 700; *Mathis*, 2018 Tex. App. LEXIS 10432, at *7; *Ashraf*, 2012 Tex. App. LEXIS 4345, at *21. We overrule Gilbert's first issue.[10]

**Retroactive Child Support**

In his second issue, Gilbert challenges the trial court's ruling that ordered "retroactive child support in an amount that requires payment of child support for [Nathan] a child in the possession solely of [Gilbert] for the duration of the case and for a period that extended beyond the period stipulated to by the parties." Specifically, Gilbert challenges the amount of the award—$10,549.46—because it "reflects support for three children before the Court and covered a calculated duration of support from August 2020 through May 2021." Gilbert argues that Dana should not have been awarded support for Nathan because he resided solely with Gilbert after the parties' separation until his graduation from high school and that the parties agreed that the retroactive child support would begin in September 2020.

*Standard of Review*

We also review a trial court's award of retroactive child support for abuse of discretion. *Worford*, 801 S.W.2d at 109; *In re J.H.*, 264 S.W.3d at 923; *see In re J.M.W.*,

_____

[10] To the extent that Gilbert complains about the trial court's "refusal to consider testimony and evidence concerning the value of the property included in the agreement incident to divorce," he has not preserved this complaint for our review. *See* Tex. R. Evid. 103(a)(2) (requiring party to inform trial court of substance of excluded evidence by offer of proof unless it was apparent from context). This complaint also has been inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

470 S.W.3d 544, 549 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that trial court "enjoys broad discretion in determining the amount of retroactive child support, if any, to be ordered"). Further, because no findings of fact and conclusions of law were filed, it is implied that the trial court made all findings necessary to support the award of retroactive child support, the award must be affirmed if it can be upheld on any legal theory supported by the evidence, and we view the evidence in the light most favorable to the trial court's decision. *See Worford*, 801 S.W.2d at 109.

*Did the trial court abuse its discretion as to the amount of retroactive child support?*

Gilbert does not dispute that retroactive child support was appropriate. The evidence showed that no child support was paid during the case. *See* Tex. Fam. Code § 154.009(a) (authorizing trial court to "order a parent to pay retroactive child support" if among other things, parent "had not previously been ordered to pay support for the child"). Gilbert's challenge is to the amount, contending that the trial court should have awarded $4,746.32, the amount that he proposed to the trial court.[11]

"In ordering retroactive child support, the court shall apply the child support guidelines provided by [chapter 154]." *See* Tex. Fam. Code § 154.009(b). "The child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered." *Id.* § 154.131(a). In determining the amount of retroactive child support, the court also "shall consider the net resources of the obligor during the relevant time period"

---

[11] In his post-trial briefing to the trial court, Gilbert argued:

The total support amount for retroactive support, within the framework of the parties' agreement and considering each month's obligation from October through the date of trial would total $4,746.32.

and whether, relevant here, "the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family" and "the obligor has provided actual support or other necessaries before the filing of the action." *Id.* § 154.131(b)(3), (4). However, the listed factors in section 154.131 do not bind the trial court but are "merely intended to guide the trial court in determining the amount of retroactive child support." *In re J.H.*, 264 S.W.3d at 924 (citing *Garza v. Blanton*, 55 S.W.3d 708, 710 (Tex. App.—Corpus Christi–Edinburgh 2001, no pet.)); *see also In re Sanders*, 159 S.W.3d 797, 800–01 (Tex. App.—Amarillo 2005, no pet.) (stating that compliance with guidelines is not mandatory when deciding amount of retroactive child support). Further, a trial court may order child support in an amount other than that established by the guidelines, *see* Tex. Fam. Code § 154.123 (authorizing court to order support in amount not established by guidelines if "evidence rebuts presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines"), and is not bound by the parties' agreement concerning child support if the court finds that the agreed amount is not in the best interest of the child, *see id.* § 154.124 (addressing agreements between parties for child support and stating that "[i]f the court finds the agreement is not in the child's best interest, . . . the court may render an order for the support of the child").

Gilbert argues that it was uncontroverted that Nathan did not reside with Dana, that she did not provide financial or medical support to Nathan throughout the case, that she only supported the other two children during her periods of possession, and that she agreed to limit the award of retroactive child support from September 2020 to the date of the final hearing. We, however, must view the evidence in the light most favorable to the trial court's implied findings that support the awarded amount. *See Worford*, 801 S.W.2d at 109. The trial court reasonably could have found that the parties' agreement to limit retroactive child support from

September 2020 to the final hearing was not in the best interest of the children. *See* Tex. Fam. Code § 154.124(d); *see Worford*, 801 S.W.2d at 109 (stating that judgment must be affirmed if it can be upheld on any legal theory supported by evidence). Further, assuming without deciding that the amount awarded varied from the guidelines, the trial court reasonably could have found that the evidence justified that variance and that it was in the children's best interest. Although Nathan resided in Gilbert's house during the case, Dana testified about expenditures for the children, which the trial court reasonably could have found included Nathan. The evidence also showed: (i) except for a few weeks on two different occasions, Anna, who needed significant care, resided with Dana during the case; (ii) the parties shared possession of Ingrid; (iii) despite earning significantly more than Dana, Gilbert provided minimal financial assistance to Dana after the parties ceased living together in January 2020; and (iv) Dana was struggling financially, including selling her "plasma to get money for food," going to food pantries, and having her vehicle repossessed because she "was choosing to spend that money on some food and medications for the kids." *See* Tex. Fam. Code § 154.123(b) (listing needs of children and financial resources available for support of children among relevant factors for court to consider in determining amount of child support).

The evidence also supported an implied finding that the amount of retroactive child support would not "impose an undue financial hardship" on Gilbert or his family. *See id.* § 154.131(b)(3); *Bunts v. Williams*, No. 01-17-00643-CV, 2019 Tex. App. LEXIS 4267, at *24–25 (Tex. App.—Houston [1st Dist.] May 23, 2019, no pet.) (mem. op.) (concluding that evidence was sufficient for trial court to determine that retroactive child support would not be "undue hardship" when father "did not specifically testify how paying retroactive child support would be a hardship for him"); *In re J.H.*, 264 S.W.3d at 925 (listing among evidence that supported

13

implied findings for retroactive child, evidence of "a lack of support in the past" and of parent making approximately $60,000 per year). Although he was unemployed for five to six months during the case, Gilbert was employed for the first few months after the parties ceased living together, received unemployment benefits when he was not employed, and then earned significant income on a contract basis before he became employed in a salaried position, earning $90,000 annually. He also was given two years from January 2022 to pay the retroactive child support.

On this record, we conclude that the trial court had sufficient information on which to exercise its discretion and that it did not abuse that discretion in the amount of retroactive child support awarded. *See Worford*, 801 S.W.2d at 109; *In re R.G.G.*, 2005 Tex. App. LEXIS 2373, at *3 ("We may not substitute our judgment for that of the trial court on matters committed to the trial court's discretion." (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992))). We overrule Gilbert's second issue.

## CONCLUSION

For these reasons, we affirm the final decree of divorce.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Theofanis, and Jones*

Affirmed

Filed: April 28, 2023

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

14