

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00512-CV

_____

FREEMAN MILLS PC, Appellant

V.

LAURA BOSWELL AND BRIAN HUNTLEY PETTIT, Appellees

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-744248-23

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Freeman Mills PC filed a petition in intervention in the divorce of Appellees Laura Boswell (formerly Pettit) and Brian Huntley ("Hunt") Pettit[1] asserting that it had a judgment against Hunt and objecting that the divorcing parties' mediated settlement agreement concerning their community-property division was a sham that should not be enforced. Upon Laura's motion, the trial court struck Freeman Mills' petition and signed the parties' agreed divorce decree.

Freeman Mills raises two issues: (1) it argues that that trial court abused its discretion by striking its intervention petition, and (2) it challenges the agreed divorce decree's provision sealing the divorce file. On the first issue, Freeman Mills did not show an abuse of discretion. And on the second, because Freeman Mills was not a party when the trial court signed the divorce decree, it may not complain about the decree's sealing provision. We will affirm.

## I. Background

Laura filed for divorce on December 15, 2023, claiming that she and Hunt had ceased to live as spouses around April 1, 2023. On January 22, 2024, they reached an informal settlement agreement dividing their assets and liabilities and resolving their child-support and child-custody issues, and then on February 13, 2024, they signed a

---

[1]Hunt did not file an appellate brief.

2

mediated settlement agreement in accordance with the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 6.602, 153.0071.

On March 21, 2024, Freeman Mills filed a "Petition in Intervention and Objection to the Mediated Settlement." Freeman Mills asserted that it had obtained a nearly $600,000 judgment (before postjudgment interest) on January 5, 2024, against Hunt and three of his business entities for unpaid legal bills. Freeman Mills objected that the Pettits' divorce settlement agreement "[was] a sham" because it "improperly [sought] to shield all assets from [its] judgment lien and leave [Hunt] with all of the debt and no property." Freeman Mills alleged that the Pettits were "seeking to engage in a fraudulent transfer in violation of the Texas Uniform Fraudulent Transfer Act." Among other remedies, Freeman Mills sought the appointment of a receiver to take charge of transferred assets.

A week after intervening, Freeman Mills propounded written discovery in aid of its judgment upon Hunt and Laura. Laura moved to strike Freeman Mills' intervention and for a protective order from its discovery requests.

The trial court considered Laura's motion to strike on June 24—during a hearing for which there is no reporter's record—and after initially issuing a "letter ruling,"[2] it signed an order granting the motion. The trial court then signed the agreed

---

[2]The letter ruling indicated that the trial court would grant the motion to strike, which would moot several other pending motions, including Laura's protective-order motion and Freeman Mills' request for a receiver.

final decree of divorce. Among its terms, the decree sealed the divorce's case file: "IT IS FURTHER ORDERED that all papers and records in this case, including the minutes of the Court, are ordered sealed."[3]

## II. Intervention

In its first issue, Freeman Mills argues that the trial court abused its discretion by striking its petition in intervention. We disagree.

### A. Applicable law and standard of review

The right of intervention is rooted in equity, *see Zeifman v. Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, no pet.), and Rule 60 governs: "Any party may intervene by filing a pleading, subject to being [struck] by the court for sufficient cause on the motion of any party," Tex. R. Civ. P. 60. When a party moves to strike an intervention, the intervenor must demonstrate a justiciable interest in the pending suit. *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008); *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990).

---

[3]In the agreed final divorce decree, the trial court found that the Pettits had entered into a mediated settlement agreement on February 13, 2024, and a supplemental mediated settlement agreement on September 27, 2024, and the trial court approved of those agreements as merged into the decree. Laura has attached a purported copy of the supplemental agreement with a sworn verification to her appellate brief, but that agreement and verification are not in the record. We may not consider documents that are outside of the appellate record and decline to do so here. *See* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *Big Rock Inv'rs Ass'n v. Big Rock Petroleum, Inc.*, 409 S.W.3d 845, 852 n.4 (Tex. App.—Fort Worth 2013, pet. denied) (declining to take judicial notice of documents attached to appellate brief).

"A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation." *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.); *see McCord v. Watts*, 777 S.W.2d 809, 811–12 (Tex. App.—Austin 1989, no writ) (stating that a justiciable interest is "analogous to that essential for a party to maintain or defend an action" (citation omitted)). We examine the facts alleged in the intervenor's petition "along with [those] in the pleadings of the other parties." *Zeifman*, 229 S.W.3d at 464 (citing *McCord*, 777 S.W.2d at 812).

Yet even when an intervenor has established a justiciable interest, a trial court maintains broad discretion when ruling on a motion to strike. *See Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982); *Turley*, 109 S.W.3d at 70. A trial court should consider whether the intervention will complicate the case by excessively multiplying the issues and "is almost essential to effectively protect the intervenor's interest." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. We consider these factors against the well-settled abuse-of-discretion backdrop:

> A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. We may not reverse for an abuse of discretion merely because we disagree with the trial court's decision; we must affirm so long as the decision is within the trial court's discretionary authority. The party claiming an abuse of discretion has the burden on appeal to show it.

*2016 Parkview Condos. Dev., LLC v. Marshall*, No. 02-23-00221-CV, 2024 WL 725504, at *17–18 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.) (mem. op.) (cleaned up).

**B. Analysis**

Freeman Mills argues that the trial court abused its discretion because (1) as a judgment creditor, it had a justiciable interest in the divorce case; (2) its effort to protect that interest would not complicate the divorce case or multiply the property-division issues already before the trial court; and (3) the intervention was necessary because it could not relitigate the divorce decree's property characterization and division in a separate proceeding. Laura disputed all of these grounds. Although we agree with Freeman Mills that it established its justiciable interest, after considering the other factors we disagree that Freeman Mills showed an abuse of the trial court's discretion.

### 1. The justiciable-interest factor

Freeman Mills premises its claim to having a justiciable interest in the Pettits' divorce case on the money judgment it obtained against Hunt,[4] and it provided a copy of that judgment to the trial court. Freeman Mills claimed that it "has a judgment lien on all of [Hunt's] property," but Laura disputed this, asserting that Freeman Mills was "no more than an unsecured creditor of Hunt."

---

[4]In its brief, Freeman Mills urges us to take judicial notice of certain aspects of the proceedings from the civil case in which it obtained the judgment against Hunt, but only the final judgment from that proceeding is in the record. We decline to take judicial notice of records from Freeman Mills' separate lawsuit against Hunt that Freeman Mills did not present to the trial court. *See In re K.L.R.*, 162 S.W.3d 291, 306 (Tex. App.—Tyler 2005, no pet.) (declining to take judicial notice of "records of any court not properly admitted into evidence before the trial court" or that were "unavailable to the trial court").

Freeman Mills did not attach an abstract of judgment to its petition in intervention and did not plead that it had abstracted the judgment. *See Transcon. Realty Inv'rs, Inc. v. Orix Capital Markets LLC*, 470 S.W.3d 844, 847 (Tex. App.—Dallas 2015, no pet.) ("Under Texas law, an abstract of judgment, 'when it is recorded and indexed . . . constitutes a lien on and attaches to any real property of the defendant, other than real property exempt from seizure or forced sale . . . that is located in the county in which the abstract is recorded and indexed.'" (quoting Tex. Prop. Code Ann. § 52.001)). But by attaching a copy of its judgment against Hunt to its petition in intervention, Freeman Mills established that, at a minimum, it was an unsecured judgment creditor and was seeking to protect its ability to enforce its judgment against property at issue in the divorce. As an unsecured judgment creditor, Freeman Mills established that it had a justiciable interest in the Pettits' divorce case. *See In re Marriage of Hale*, No. 06-22-00066-CV, 2023 WL 2979026, at *1 n.1 (Tex. App.—Texarkana Apr. 18, 2023, no pet.) (mem. op.); *Fletcher v. Nat'l Bank of Commerce*, 825 S.W.2d 176, 179 (Tex. App.—Amarillo 1992, no writ); *Wileman v. Wade*, 665 S.W.2d 519, 520–21 (Tex. App.—Dallas 1983, no writ).

### 2. The case-complication, issue-multiplication, and necessity-of-participation factors

On the other equitable factors—case complication, issue multiplication, and necessity of participation—Freeman Mills attached no evidence to its petition in intervention and did not provide us with a record from the June 24 hearing. As we

will explain, considering these other equitable factors, Freeman Mills did not carry its burden to show an abuse of discretion. *See 2016 Parkview Condos. Dev., LLC*, 2024 WL 725504, at *18.

In her motion to strike, Laura argued that because she and Hunt had reached a mediated settlement agreement resolving all the issues in their divorce proceeding, Freeman Mills' intervention would have delayed the divorce proceeding and injected issues that the parties had already resolved. A "mediated settlement agreement, meeting certain statutory formalities, is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing Tex. Fam. Code Ann. § 6.602(b)–(c)). Unlike other family-law settlement agreements, a mediated settlement agreement is irrevocable, and a trial court is not required to determine if the agreed-upon property division is "just and right" before approval. *Id.*

That being said, a trial court is not required to enforce a mediated settlement agreement "that is illegal in nature or procured by fraud, duress, coercion, or other dishonest means." *Id.* at 619; *see also* Tex. Const. art. XVI, § 15 (allowing spouses to partition their property between themselves when doing so "without the intention to defraud pre-existing creditors"). Unlike the parties in *Milner*, Freeman Mills objected to the Pettits' mediated settlement agreement as a sham designed to divest Hunt of the marital assets from which it could enforce its judgment while leaving Hunt

8

"penniless," "destitute," and responsible for—yet incapable of—paying the judgment. 361 S.W.3d at 619.

Freeman Mills contends that it could only pursue its fraudulent-transfer claim as a necessary party to the Pettits' divorce proceeding and could not challenge the property and debt division in a separate or subsequent lawsuit. But by striking Freeman Mills' petition in intervention, the trial court "ha[d] no power to disturb the rights that creditors [such as Freeman Mills] lawfully hold against the parties." *Texans Credit Union v. Brizendine*, No. 05-13-01422-CV, 2015 WL 1969707, at *2 (Tex. App.—Dallas May 4, 2015, no pet.) (mem. op.); *see Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App.—Houston [14th Dist.] 1995, no writ.); *Glasscock v. Citizens Nat'l Bank*, 553 S.W.2d 411, 413 (Tex. App.—Tyler 1977, writ ref'd n.r.e.). Texas courts have consistently held that the division of spouses' property upon divorce may not prejudice a creditor's rights to satisfy its debt.[5] *See* Tex. Fam. Code

---

[5]Many cases use the term "community debt" in referencing a creditor's right to protect its interest, but the supreme court has clarified that that term does not accurately reflect how Texas law determines each spouse's liability for debts incurred by or for the other. *See Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 & n.21 (Tex. 2013) (citing Joseph W. McKnight, *Family Law: Husband and Wife*, 37 SW. L.J. 65, 76–77 (1983)). "Marriage itself does not create joint and several liability." *Id.* at 655 (quoting Tom Featherston & Allison Dickson, *Marital Property Liabilities: Dispelling the Myth of Community Debt*, 73 Tex. Bar J. 16, 19 (2010)). Instead, the Texas Family Code sets forth the rules for determining each spouse's liability, *see* Tex. Fam. Code Ann. §§ 3.201 – .203; *see also* Featherston & Dickson, *supra*, 73 Tex. Bar J. at 17 (explaining the multi-step process), and also enables a court to "determine, as deemed just and equitable, the order in which particular separate or community property is subject to execution and sale to satisfy a judgment," Tex. Fam. Code Ann. § 3.203.

Ann. §§ 3.201–.203; *Blake*, 900 S.W.2d at 111; *Rush v. Montgomery Ward*, 757 S.W.2d 521, 523 (Tex. App.—Houston [14th Dist.] 1988, writ denied); *Wileman*, 665 S.W.2d at 520; *Glasscock*, 553 S.W.2d at 413.

To illustrate, in *Glasscock*, a man deeded certain property to his ex-wife shortly before they divorced. 553 S.W.2d at 412. Creditors claiming an interest in the transferred property sought to execute on the property and sued to set aside the transfer, claiming the transfer had been "for the purpose of hindering, delaying[,] and defrauding" them. *Id.* The ex-wife argued that that creditors' suit was an impermissible collateral attack on the divorce decree's approving the former spouses' property settlement. *Id.* at 413. The court of appeals disagreed and held that the divorce court could not have disturbed the creditors' rights, and it affirmed a jury's finding that the deed had been executed with intent to hinder or delay the creditors. *Id.* at 413, 415.

Freeman Mills acknowledges *Glasscock*'s holding, but it argues that a more recent case from the Texas Supreme Court—*S.C. v. M.B.*, 650 S.W.3d 428 (Tex. 2022)—has "implicitly overrule[d] *Glasscock*" and required it to intervene. Not so.

In *S.C.*, the supreme court addressed what happens between former spouses when their divorce decree fails to divide all the community property, causing such property to cease to be community property. *Id.* at 434. Historically, the Property Code provided a partition remedy, which presumed an even split, but in 1987, a Family Code provision was enacted to allow a remedy using the just-and-right

10

standard. *Id.* At issue was whether the Family Code's remedy was the exclusive remedy, vesting exclusive jurisdiction in the original divorce court. *Id.* Examining the Family Code's text, the court answered, "[N]o." *Id.*

In reaching this conclusion, the supreme court stated that "the new statute does not allow anyone to relitigate issues already resolved by the final divorce decree." *Id.* at 441. And the court reiterated its prior holding that "[a] judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *Id.* (first citing *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); then citing *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003), and then citing *Baxter v. Ruddle*, 794 S.W.2d 761, 762–63 (Tex. 1990)). This is the language that Freeman Mills seizes on to argue that it would be precluded from relitigating the division of the Pettits' assets and liabilities.

But *S.C.* did not involve a creditor's claim that the divorcing parties' decree constituted a fraudulent transfer of assets intended to defraud creditors. *Id.* at 434. Nor were any creditors making a similar argument in *Pearson*, *Reiss*, or *Baxter*. In all four cases, the supreme court stated its no-relitigation holding in the context of adversarial former spouses. *Id.*; *Pearson*, 332 S.W.3d at 363; *Reiss*, 118 S.W.3d at 443; *Baxter*, 794 S.W.2d at 762–63.

*S.C.* thus did not "implicitly overrule *Glasscock*" or any other case in which a court has allowed a judgment creditor to sue after a divorce for an alleged fraudulent transfer in the context of the divorce decree's property division. *See, e.g., Henry S. Miller*

11

*Co. v. Evans*, 452 S.W.2d 426, 433 (Tex. 1970) ("It is clear that the divorce decree would not be res judicata in this proceeding regarding [a creditor] and the Sheriff, because neither of them was a party to the prior divorce action."); *Caballero v. Vig*, 600 S.W.3d 452, 459 (Tex. App.—El Paso 2020, pet. denied) ("It is well-established that an individual who is not a party to a final judgment lacks standing to collaterally attack the judgment, unless the individual can establish their interests are directly and necessarily affected by the judgment itself."). Courts have consistently recognized that "a creditor whose rights are prejudiced by a judgment pursued for the purpose of delaying, hindering, or defrauding the creditor" may challenge that judgment. *Caballero*, 600 S.W.3d at 459 (quoting *Grynberg v. Christiansen*, 727 S.W.2d 665, 667 (Tex. App.—Dallas 1987, no writ)); *see Henry S. Miller Co.*, 452 S.W.2d at 433. In short, *S.C.*'s holding did not mandate that Freeman Mills intervene in the Pettits' divorce case as opposed to pursuing its legal remedies in a separate proceeding to gather and turnover Hunt's assets; set aside any fraudulent transfer of assets to Laura; or pursue collection from Hunt, Laura, or both of them.

As we noted, Freeman Mills urges us to take judicial notice of the records from the civil case in which it obtained the underlying judgment against Hunt, which we cannot do. But this raises the issue of what, if anything, has happened or is happening in that case as far as postjudgment discovery or collection efforts (such as whether Freeman Mills has sought or is seeking the appointment of a receiver) and whether

the parties so informed the trial court in the divorce case of any parallel proceedings during the June 24 hearing—of which Freeman Mills has brought forward no record.

It is hard to imagine that Freeman Mills, which served postjudgment discovery in the underlying divorce case against Hunt and Laura, would not at least have propounded postjudgment discovery in the civil case giving rise to its judgment. But the record is silent on this. Courts frequently consider the existence of parallel or separate litigation, and the availability of such a remedy, in considering whether intervention will complicate the case, multiply the issues, or require the intervenor's participation. *See, e.g., J. Fuentes Colleyville, L.P. v. A.S.*, 501 S.W.3d 239, 244 (Tex. App.—Fort Worth 2016, no pet.) (stating that intervenors were "fully capable of protecting their interests via" another pending suit); *L. Offs. of Yuen & Assocs. v. Hartman Reit Operating P'ship*, No. 14-10-00636-CV, 2012 WL 1357668, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, no pet.) (mem. op.); *Turley*, 109 S.W.3d at 70; *see also Doe v. Carroll*, No. 03-08-00556-CV, 2009 WL 1811002, at *7 (Tex. App.— Austin June 23, 2009, no pet.) (mem. op.) (striking intervention and reasoning that "[t]he divorce decree does not purport to limit pre-existing creditor's rights").

Without a reporter's record from the June 24 hearing on the other factors Freeman Mills needed to show, we presume the evidence supported the trial court's ruling striking Freeman Mills' petition in intervention and cannot conclude that the trial court abused its discretion. *See, e.g., Budri v. McAllister*, No. 02-24-00092-CV, 2025 WL 494694, at *4 (Tex. App.—Fort Worth Feb. 13, 2025, pet. denied) (mem.

13

op.); *cf. Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 246–47 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that trial court did not abuse its discretion in denying a motion to strike when the record lacked that motion, the intervenors' response, or a reporter's record of any hearing on the motion). Accordingly, we overrule Freeman Mills' first issue.

## III. Sealing

In its second issue, Freeman Mills argues that the trial court abused its discretion by sealing the divorce's case file. But after a final judgment, an unsuccessful intervenor—who is thus not a party to the case—may challenge only the striking of its intervention petition and not the final judgment. *See White v. White*, 704 S.W.3d 250, 277 (Tex. App.—El Paso 2024, no pet.); *City of Austin v. Quick*, 930 S.W.2d 678, 683 (Tex. App.—Austin 1996), *aff'd*, 7 S.W.3d 109 (Tex. 1998). Because Freeman Mills was not a party when the trial court signed the divorce decree, it may not challenge the divorce decree's sealing provision.[6] We overrule Freeman Mills' second issue.

---

[6]Freeman Mills argues that the sealing order impedes its efforts to trace assets, but Freeman Mills is in possession of the mediated settlement agreement; the purported supplement to the mediated settlement agreement; and the divorce decree, which identifies the property that was divided. Additionally, the trial court's sealing of the divorce's case file limits public access to that file, but it does not prevent Freeman Mills from obtaining relevant documents and discovery responses from Hunt and Laura, including in the pending civil case against Hunt or in any another fraudulent-transfer case.

## IV. Conclusion

Having overruled Freeman Mills' two issues, we affirm the trial court's order granting Laura's motion to strike Freeman Mills' petition in intervention and the final divorce decree.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: July 17, 2025